STATE OF NORTH CAROLINA v. SYLVESTER SMITH

No. 713A84

(Filed 10 December 1985)

1. **Criminal Law § 89.2— instruction on corroborating evidence—necessity for request**

    An instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such an instruction, and a general objection will not suffice.

2. **Criminal Law § 89.2— evidence admissible for substantive purposes—corroboration limitations inapplicable**

    If evidence is admissible for substantive purposes, none of the "corroboration" limitations apply, and a party is not entitled to an instruction limiting its admissibility to that purpose, whether he requests one or not.

3. **Criminal Law § 73.5— medical diagnosis or treatment exception to hearsay rule—statements made by sexual assault victims to grandmother**

    Statements made by four-year-old and five-year-old girls to their grandmother concerning sexual assaults which immediately resulted in their receiving medical treatment and diagnosis were admissible as substantive evidence under the medical diagnosis or treatment exception to the hearsay rule set

**State v. Smith**

forth in N.C.G.S. 8C-1, Rule 803(4) even though the grandmother did not have a license to practice medicine or psychology.

**4. Criminal Law § 73.5— medical diagnosis or treatment exception to hearsay rule—identity of perpetrator**

A statement by a child to her grandmother that it was defendant who had caused her injuries was admissible under the *medical diagnosis or treatment* exception to the hearsay rule.

**5. Criminal Law § 73.5— medical diagnosis or treatment exception to hearsay rule—statements to Rape Task Force volunteers inadmissible**

Statements made by rape and sexual assault victims to Rape Task Force volunteers after they had already reached the hospital and had received medical treatment and diagnosis were not admissible as substantive evidence under the medical diagnosis or treatment exception to the hearsay rule.

**6. Criminal Law § 73.4— excited utterance exception to hearsay rule—children's statements three days after assaults**

Statements made by four-year-old and five-year-old girls to their grandmother about sexual assaults between two and three days after the assaults occurred were admissible under the *N.C.G.S. 8C-1, Rule 803(2)* excited utterance exception to the hearsay rule.

**7. Criminal Law § 73.2— catchall exception to hearsay rule—notice—inquiry by court**

It is the duty of the proponent of a hearsay statement proffered under the N.C.G.S. 8C-1, Rule 803(24) catchall exception to the hearsay rule to alert the trial judge that the statement is being offered as a hearsay exception under Rule 803(24). Upon being notified that the proponent is seeking to admit the statement pursuant to that exception, the trial judge must have the record reflect that he is considering the admissibility of the statement pursuant to Rule 803(24), and only then should the trial judge proceed to analyze the admissibility by undertaking the six-part inquiry required of him by the rule.

**8. Criminal Law § 73.2— catchall exception to hearsay rule—analysis required of trial court**

In order to admit hearsay testimony under the "catchall" or "residual" exception of N.C.G.S. 8C-1, Rule 803(24), the trial court must: (1) make the initial determination that proper written notice was given to the adverse party and must include that determination in the record, although detailed findings of fact in making this determination are not required; (2) determine that the hearsay statement is not specifically covered by any of the other 23 exceptions and enter this conclusion on the record; (3) make findings of fact and conclusions of law supporting a determination that the proffered statement possesses circumstantial guarantees of trustworthiness equivalent to those required for admission under the enumerated exceptions; (4) include in the record a statement that the proffered evidence is offered as evidence of a material fact; (5) make findings of fact and conclusions of law supporting a determination that the proffered evidence is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable ef-

forts; and (6) enter a conclusion on the record that admission of the proffered evidence will best serve the general purposes of the Rules of Evidence and the interests of justice.

**9. Criminal Law § 73.2— admission of testimony under Rule 803(24)—absence of findings—reversible error**

Testimony by two Rape Task Force volunteers as to statements made by two child rape and sexual offense victims which did not corroborate the victims' testimony at trial was not admissible under the N.C.G.S. 8C-1, Rule 803(24) residual exception to the hearsay rule where the record reflects no statements, rationale or findings and conclusions whatsoever concerning the requirements of Rule 803(24) and thus does not support the trial court's ruling in effect allowing this testimony to be considered as substantive evidence. Furthermore, the admission of such testimony by one volunteer was reversible error in defendant's trial for first degree sexual offense against one of the children where the testimony was in direct conflict with the testimony of the child victim.

**10. Criminal Law § 53; Rape and Allied Offenses § 4.2— expert medical testimony —opinion that injuries caused by male sex organ**

A physician was properly allowed to state his opinion that injuries he observed during his examination of a child were caused by "a male penis" even though the opinion was not qualified by the words "could" or "might" since N.C.G.S. 8C-1, Rule 705 has eliminated the requirement that expert opinion testimony be in response to a hypothetical question. Furthermore, under N.C.G.S. 8C-1, Rule 704, the testimony was not objectionable because it embraced the ultimate issue to be decided by the jury.

**11. Criminal Law § 53; Rape and Allied Offenses § 4.2— expert medical testimony —likelihood that victims engaged in sexual intercourse**

The Child Medical Examiner of Brunswick County was properly permitted to state his expert medical opinion that it was "highly likely" that two female children had had sexual intercourse based upon the contents of another doctor's medical report and information supplied to the witness by two colleagues that they were unaware of a case of trichomonas in a prepubertal female who had not engaged in sexual intercourse. N.C.G.S. 8C-1, Rule 703.

**12. Rape and Allied Offenses § 5— first degree rape—first degree sexual offense— sufficiency of evidence**

The evidence was sufficient to support submission to the jury of issues as to defendant's guilt of first degree rape and first degree sexual offense against a four-year-old child and a five-year-old child.

**13. Rape and Allied Offenses § 6.1— first degree rape—first degree sexual offenses—instructions on attempts not required**

The evidence in a prosecution for first degree rape and first degree sexual offense against a four-year-old child and a five-year-old child did not require the trial court to instruct on the lesser included offenses of attempted first degree rape and attempted first degree sexual offense where there was sufficient evidence of penetration to support first degree rape convictions, there was sufficient evidence to support convictions of first degree sexual offenses, and defendant denied any knowledge of the alleged incidents.

Justice BILLINGS did not participate in the consideration and decision of this case.

DEFENDANT was tried before *Clark, J.*, at the 13 August 1984 Criminal Session of Superior Court, BRUNSWICK County, on charges of two counts each of first-degree rape, first-degree sexual offense, and indecent liberties with a minor against Gloria Ogundeji and Janell Smith. The jury returned verdicts of guilty on all charges except the first-degree rape of Janell, for which defendant was acquitted. Judgment was arrested on both indecent liberties convictions; defendant was sentenced to three life sentences, two of which were to run concurrently and the third consecutively. Defendant appeals as a matter of right.

*Lacy H. Thornburg, Attorney General, by Jane Rankin Thompson, Assistant Attorney General, for the State.*

*William F. Fairley for the defendant-appellant.*

*Northern Little and Thibaut, by J. Anderson Little, for Orange County Social Services; Corinne G. Russell for Wake County Social Services; Russell Odom for Durham County Social Services; G. Keith Whited for Alamance County Social Services; David Kennedy for Cumberland County Social Services, amici curiae.*

*Adam Stein, Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, amicus curiae.*

MEYER, Justice.

The State's evidence tended to show that one night during the weekend of 2 March 1984, the defendant, Sylvester Smith, entered the bedroom of Gloria Ogundeji and Janell Smith, age four and five, respectively, and engaged in sexual relations with both girls. Gloria is the daughter of Ann Ogundeji with whom the defendant was then living. Janell is Gloria's cousin, daughter of Ann's sister, Catherine. During the time in question, Janell was staying with Ann, Sylvester, Gloria, and Sylvester, Jr., in a mobile home. The victims' grandmother is Mrs. Fannie Mae Davis.

At trial, Gloria testified that the defendant came into the bedroom where she and Janell were sleeping, slipped off her pants, and touched her in her "project" with his "worm." She

denied at trial that he had touched her anywhere else. Janell testified that the defendant threatened to beat her "half to death," pushed her down on the bed, and stuck his "thing in my project." She also testified that he "stick [sic] his hand in my butt."

At trial, each victim was sequestered during the other's testimony. The girls were asked to show the jury where their "project" was, and both independently pointed to their vaginal areas. Gloria indicated the same area when asked to show where the "worm" is, and also identified both the "project" and the "worm" on anatomically correct dolls used as exhibits at trial. Janell pointed to her anal area when asked to show where her "butt" is.

The State called Minerva Glidden and Elena Peterson, both of whom were Rape Task Force volunteers in Wilmington. Ms. Glidden had worked with Gloria following the incident, and Ms. Peterson had worked with Janell. The trial judge had allowed defendant's request that these witnesses be sequestered during the children's testimony over the State's objection that their presence was crucial in order that the girls feel at ease during their testimony.

Minerva Glidden, a registered nurse and Rape Task Force volunteer, testified that she was called to the New Hanover Memorial Hospital emergency room at around 1:45 p.m. on 5 March 1984, where she first met Gloria. Over defendant's request for a limiting instruction on corroboration, Ms. Glidden was allowed to testify that Gloria told her that defendant had put his finger in Gloria's "project," then he put his finger in her "butt." Ms. Glidden said Gloria had indicated her vaginal and anal areas. She also testified that Gloria told her the defendant had gotten on top of her and put his "peeter-weeter" in her "project." Gloria had indicated that as the penis on an anatomically correct doll.

Ms. Peterson, Rape Task Force Coordinator, testified that she had first met Janell on 7 March 1984. Over a general objection by the defendant, Ms. Peterson recounted what Janell told her about the incident. "The story was that Sylvester put his 'thing' in her 'project.' And he stuck his finger in her—in her 'butt.' And that if she told anybody, that he would beat her half to death."

Mrs. Fannie Mae Davis, the girls' grandmother, testified that she went to the mobile home where Sylvester, Ann, Gloria, and Janell were living on 3 March 1984[1] and that Gloria had led her into the bedroom to tell her "what Sylvester done [sic] to me." Gloria told Mrs. Davis that "Sylvester had went [sic] in her and had, you know, hurt her; and in her 'butt' area, he put his hand there." "She said he pressed his 'peeter' in her 'project;' and in her 'butt,' his finger." Gloria told Mrs. Davis that Sylvester had told her to go in the bathroom and wash the blood off.

Mrs. Davis told her daughter Ann what Gloria had said and told Ann to take the child to the hospital. Ann later testified that she and Gloria hitchhiked to the hospital in the rain. Mrs. Davis and her husband met Janell at the mobile home when Janell came home from school that afternoon. Janell's mother, Catherine, then took Janell to New Hanover Memorial Hospital. Both Gloria and Janell were examined at the hospital by Dr. Alfred Woodworth on 5 March 1984.

Dr. Woodworth testified that his examination of Gloria revealed "a well-circumscribed area of bruising around the vaginal opening" on the interior of the labia. He stated that it was his opinion that a "male penis" caused the trauma he observed. Dr. Woodworth also discovered the presence of protozoa trichomonas, an organism transmitted primarily through sexual contact.[2]

Dr. Woodworth testified that his examination of Janell revealed "marked redness and irritation, with areas of contusions, . . . around the vaginal opening." He stated that a finger or penis could have caused Janell's injuries. His examinations revealed no presence of sperm, and he noted that Gloria's hymenal ring was intact.

The defendant, Sylvester Smith, took the stand and denied any knowledge of the incidents.

---

1. All other evidence indicates that Mrs. Davis' visit referred to here was on 5 March 1984, a Monday.

2. Dr. Woodworth stated on cross-examination that the disease could also be caused by improper hygiene. Dr. James Robert Forstner, Brunswick County Child Medical Examiner and family practice physician, was allowed to testify that two of his colleagues told him that they did not know of a case of trichomonas in a prepubertal female that had shown up without sexual contact.

Defendant first assigns as error the trial court's failure to instruct the jury that the testimony of Minerva Glidden, Elena Peterson, and Fannie Mae Davis was to be considered for the limited purpose of corroborating the victims' testimony. At trial, defendant requested an instruction limiting to corroboration the jury's consideration of Ms. Glidden's testimony as to what Gloria told her. The trial judge stated that he would instruct the jury at the appropriate time and that the defendant could hand up whatever instructions he wished. (Defendant subsequently tendered limiting instructions for the jury charge, and they were refused.) Prior to Ms. Peterson's and Mrs. Davis' testimony regarding what Janell and Gloria told them about the incidents, defendant made general objections, both of which were overruled.

[1] The law of this State is that an instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such an instruction. A general objection will not suffice. *State v. Spain*, 3 N.C. App. 266, 164 S.E. 2d 486 (1968). *See also State v. Sauls*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. denied*, 431 U.S. 916 (1977); *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972). Although defendant properly requested a limiting instruction as to Ms. Glidden's testimony at the time it was offered, he did not do so as to the testimony of Mrs. Davis and Ms. Peterson. The record does show, however, that defendant made a written request for a jury instruction on corroboration. The trial judge, in his charge to the jury, did not give defendant's requested instruction and noted defendant's exception to the omission. Defendant's assignment of error as to the jury charge omitting his requested instruction is, therefore, properly before us.

[2] Corroboration, the opposite of impeachment, is "the process of persuading the trier of the facts that a witness is credible." 1 Brandis on North Carolina Evidence § 49 (2d rev. ed. 1982). "Corroborate" means "to strengthen; to add weight or credibility to a thing by additional conforming facts or evidence." *State v. Higgenbottom*, 312 N.C. 760, 769, 324 S.E. 2d 834, 840 (1985). Evidence may also be used for corroboration purposes when the corroborating evidence is not admitted solely for its bearing on credibility. "It is *only* when the evidence is inadmissible for substantive . . . purposes, *and* its sole claim to competence is to enhance credibility, that resort must be had to the special rules

and policies" relative to corroboration. 1 Brandis on North Carolina Evidence § 49 (2d rev. ed. 1982) (emphasis added). The corollary to this rule, then, is that if evidence is admissible for substantive purposes, none of the "corroboration" limitations apply, and a party is not entitled to an instruction limiting its admissibility to that purpose, whether he requests one or not. In the instant case, therefore, a determination of defendant's second issue as to whether this testimony was admissible as substantive evidence is a prerequisite to a determination of the first.

Defendant's second issue, in effect, requires us to decide whether the trial court erred in allowing, as substantive evidence, the testimony of Ms. Glidden, Ms. Peterson, and Mrs. Davis as to what Gloria and Janell related to them following the assaults. The defendant contends this evidence was inadmissible hearsay.

The North Carolina Evidence Code, Chapter 8C of the North Carolina General Statutes, became effective 1 July 1984. It therefore governed the admissibility of evidence at this trial which commenced 13 August 1984. N.C.G.S. § 8C-1, Rule 801(c) (Cum. Supp. 1983), defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." A hearsay statement is "not admissible except as provided by statute or by these rules." N.C.G.S. § 8C-1, Rule 802. There is no question that the testimony in dispute here was "hearsay." However, statements which otherwise would be deemed hearsay are not excluded by the rule if they are found to fall within one of the exceptions provided in Rule 803 (Availability of declarant immaterial) or in Rule 804 (Declarant unavailable).

I.

The disputed testimony of the two Rape Task Force volunteers, as well as that of Mrs. Davis, was assumed in the briefs of this case to have been admitted by the trial judge as substantive evidence pursuant to the hearsay exception set out in Rule 803(4) (statements made for purposes of medical diagnosis or treatment), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>    . . . .

(4) Statements for Purposes of Medical Diagnosis or Treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The defendant contends that the disputed testimony does not fall within this hearsay exception and is therefore inadmissible because Gloria's and Janell's statements were not made for the purposes of medical diagnosis or treatment. Defendant bases his argument on the fact that none of these witnesses claimed to hold licenses to practice medicine or psychology and could not, therefore, provide medical diagnosis or treatment.

[3] The testimony of Mrs. Davis, the girls' grandmother, to whom they first related the incident, clearly comes within the Rule 803(4) hearsay exception. In addition to telling her grandmother about the assault, Gloria described bleeding and pain. As a direct result of that conversation, Mrs. Davis advised Gloria's mother to take her to the hospital for diagnosis and treatment. Likewise, as a direct result of the conversation with Janell that afternoon, Janell was also taken to the hospital for diagnosis and treatment.

The commentary to N.C.G.S. § 8C-1, Rule 803(4), explains that "[u]nder the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, *or even members of the family* might be included." (Emphasis added.) The basis for allowing such statements into evidence as exceptions to the hearsay rule is that they are inherently trustworthy and reliable for the reason that the patient has an interest in telling or relaying to medical personnel as accurately as possible the cause for the patient's condition. *See* 4 D. Louisell & C. Mueller, Federal Evidence § 444 (1980); 4 Weinstein's Evidence § 803(4)[01] (1985).

While, here, Gloria and Janell did not specifically request medical attention, we recognize that young children cannot independently seek out medical attention, but must rely on their caretakers to do so. Their statements to Mrs. Davis immediately resulted in their receiving medical treatment and diagnosis. We

hold, therefore, that Mrs. Davis' testimony regarding her conversations with Gloria and Janell resulting in their being examined, diagnosed, and treated at New Hanover Memorial Hospital on 5 March 1984 was properly admitted as substantive evidence pursuant to the Rule 803(4) hearsay exception.

[4] Defendant also contends that Mrs. Davis' testimony, to the effect that Gloria told her it was "Sylvester" who had caused her injuries, was improperly admitted as irrelevant to Gloria's treatment or diagnosis. Some courts before which the point has been raised have found that the identity of the perpetrator is not relevant under the 803(4) (medical diagnosis or treatment) exception. If a declarant identifies the perpetrator while under the impression that he is being asked to indicate the responsible party, the identification may be accusatory in nature and thus would destroy any inherent reliability. *United States v. Narcisco*, 446 F. Supp. 252, 289 (E.D. Mich. 1977). If, however, the motivation for such statement was to disclose information to aid in medical diagnosis or treatment, the trustworthiness remains intact. *Id.* In *Goldade v. Wyoming*, 674 P. 2d 721 (Wyo. 1983), *cert. denied*, --- U.S. ---, 82 L.Ed. 2d 844 (1984), a mother was convicted of physically abusing her daughter *solely* on the basis of statements made by the child to a doctor. The doctor was allowed to testify that the child identified the mother as the perpetrator.

One commentator has noted that "[w]hile admissible evidence under traditional doctrine included only the fact that complaint was made, the trend is to allow the details of the offense and the identity of the offender, a result which appears wholly justifiable." McCormick on Evidence § 297 (3d ed. 1984). *See also* VI Wigmore, *Evidence* § 1761 n. 2 (Chadbourn rev. 1976) and cases cited therein.

We believe that, under these circumstances, the trial court did not err in allowing Mrs. Davis to testify that Gloria named Sylvester as her assailant. We note, also, that because Gloria had identified Sylvester from the witness stand, Mrs. Davis' testimony was corroborative of this fact.

[5] Defendant's contention that it was error to admit the testimony of Ms. Glidden and Ms. Peterson pursuant to Rule 803(4) (medical diagnosis or treatment) is more troubling. Defendant correctly points out that neither Ms. Glidden nor Ms. Peter-

son testified to being licensed as medical doctors or psychologists. Although Ms. Glidden had experience as a registered nurse in a psychiatric clinic, she was called to the hospital in her capacity as a Rape Task Force volunteer, not as a registered nurse. We also note that the girls' statements to these volunteers were made after they had been examined and treated by qualified medical personnel. The volunteers did not pretend to diagnose the girls' medical "condition" as Rape Task Force volunteers, but worked with them in treating the emotional effects of the events described by the girls. Gloria first met Ms. Glidden in the emergency room of the hospital. Ms. Glidden testified that she entered the room as Dr. Woodworth was leaving. Although it is possible that Gloria may have associated Ms. Glidden with the hospital and may have considered her to be among the medical personnel who treated her in connection with her injuries, we are unwilling to hold that these witnesses' testimony as to the victims' statements were properly admitted under the Rule 803(4) hearsay exception. We do not believe that the exception was created to except from the operation of the hearsay rule statements made to persons acting in the capacity of these volunteers at a time after the victims had already reached the hospital and had received medical treatment and diagnosis.

## II.

**[6]**  The State contends that the grandmother's (Mrs. Davis') testimony was also admissible under the hearsay exception, N.C.G.S. § 8C-1, Rule 803(2). That rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>  . . . .
>
> (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication. McCormick on Evidence § 297. These two requirements necessitate subjective standards. "[T]he fact

that another person in a similar situation might not have been excited does not suffice to bar resort to the exception." 4 D. Louisell & C. Mueller, Federal Evidence § 439. Although the "requirement of spontaneity is often measured in terms of the time lapse between the startling event and the statement, . . . the modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement." J. Bulkley, Evidentiary Theories for Admitting a Child's Out-of-Court Statement of Sexual Abuse at Trial, in Child Sexual Abuse and the Law 153, 155 (J. Bulkley ed., ABA-National Legal Resource Center for Child Advocacy and Protection 1983).

Many courts have addressed the admissibility of statements made by young children and testified to in court by the adult to whom they were made as Rule 803(2) "excited utterance" exceptions to the hearsay rule. The Wisconsin appellate courts[3] have developed "a special species of the excited utterance exception to the hearsay rule" for such statements. *State v. Padilla*, 110 Wis. 2d 414, 329 N.W. 2d 263 (Wis. Ct. App. 1982). In *Padilla*, the Wisconsin Court of Appeals allowed the testimony of the victim's mother and a social worker as to statements made to them by the victim three days after a sexual assault. The ten-year-old victim did not testify at the preliminary hearing, but did testify at trial. Recognizing that "[a] broad and liberal interpretation is [to be] given to what constitutes an excited utterance when applied to young children," the court noted that the stress and spontaneity upon which the exception is based is often present for longer periods of time in young children than in adults. *See* Annot. "Time Element as Affecting Admissibility of Statement or Complaint Made by Victim of Sex Crime as Res Gestae, Spontaneous Exclamation, or Excited Utterance," 89 A.L.R. 3d 102 (1979). "This

---

3. *See, e.g., State v. Gollon*, 115 Wis. 2d 592, 340 N.W. 2d 912 (1983) (mother and neighbor allowed to testify to statements of six-year-old victim made one and two days after assault when victim too afraid to testify at trial); *State ex rel Harris v. Schmidt*, 69 Wis. 2d 668, 230 N.W. 2d 890 (1975) (five-year-old stepson of defendant told his mother the next day; told defendant's probation officer 15 days later); *Love v. State*, 64 Wis. 2d 432, 219 N.W. 2d 294 (1974) (three-and-a-half-year-old told her mother the next morning after mother noticed blood); *Bertrang v. State*, 50 Wis. 2d 702, 184 N.W. 2d 867 (1971) (nine-year-old daughter of defendant told her mother the next day); *Bridges v. State*, 247 Wis. 350, 19 N.W. 2d 529, *reh'g denied*, 247 Wis. 350, 19 N.W. 2d 862 (1945) (seven-year-old told her mother one hour after assault). In all of these cases, the Wisconsin Supreme Court allowed the adults' hearsay testimony to be received as substantive evidence.

ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. Second, it is often unlikely that a child will report this kind of incident to anyone but the mother. Third, the characteristics of young children work to produce declarations 'free of conscious fabrication' for a longer period after the incident than with adults." *Padilla*, 110 Wis. 2d at 419, 329 N.W. 2d at 266 (citations omitted).

Although it noted that the three-day time period at issue was "less contemporaneous" with the assault than were the periods in previously decided cases, the court in *Padilla* stated that "contemporaneity is not a condition precedent to a finding of an excited utterance." *Id.* at 420, 329 N.W. 2d at 267. Spontaneity and stress are the crucial factors. In *Padilla*, as here, the victim was assaulted by her mother's boyfriend who told her that if she said anything to her mother, he would "hit her." *Id.* There, as here, the witness stated that the child was "afraid, scared" when she related the incident.

Where there was an overnight interval between a sexual assault and a four-year-old's statement to his mother, the Colorado Court of Appeals noted that in cases involving young children, the element of trustworthiness underscoring the excited utterance exception is primarily found in the "lack of *capacity* to fabricate rather than the lack of time to fabricate." *People v. Ortega*, 672 P. 2d 215, 218 (Colo. App. 1983) (emphasis added).

The Eighth Circuit Court of Appeals held in *United States v. Iron Shell*, 633 F. 2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001, 68 L.Ed. 2d 203 (1981), that the trial court did not abuse its discretion in stretching the excited utterance exception to let in a statement of a nine-year-old female victim of sexual assault to a police officer up to an hour and a half after the assault. The officer described the child as being "nervous and scared" and speaking in "short bursts." *Id.* at 86. "Considering the surprise of the assault, its shocking nature and the age of the declarant," it was not unreasonable to find that the victim was in a "state of continuous excitement from the time of the assault." *Id. Accord Haggins v. Warden, Ft. Pillow State Farm*, 715 F. 2d 1050 (6th Cir. 1983), *cert. denied*, 464 U.S. 1071, 79 L.Ed. 2d 217 (1984) (four-year-old's statement to nurses and police an hour and a half after sexual assault). *See also People v. Stewart*, 39 Colo. App. 142, 568 P. 2d

65 (1977) (six-year-old victim of sexual assault did not relate her story to her rescuers, but waited to tell the police (first authority figures) two hours later; court cites Federal Rule of Evidence 803(2) and upholds admissibility); *United States v. Nick*, 604 F. 2d 1199 (9th Cir. 1979) (three-year-old victim of babysitter's sexual assault described event to his mother when she picked him up from the babysitter's house after the assault; description properly admitted under Federal Rule 803(2) ).

Other factors may come into play in causing a delay between the assault and the child's statement. "In allowing a wider length of time, courts have indicated that a young child may not make immediate complaint because of threats, fear of reprisals, admonishments of secrecy, or other pressures not to disclose," particularly where, as here, the child had a close relationship with the offender. J. Bulkley, Evidentiary Theories for Admitting a Child's Out-of-Court Statement of Sexual Abuse at Trial, in Child Sexual Abuse and the Law 153, 156 (J. Bulkley ed., ABA-National Legal Resource Center for Child Advocacy and Protection 1983). *See also People v. Edgar*, 113 Mich. App. 528, 317 N.W. 2d 675 (1982); *People v. Bonneau*, 323 Mich. 237, 35 N.W. 2d 161 (1948); *State v. Creighton*, 462 A. 2d 980 (R.I. 1983).

However, in *State v. Hollywood*, 67 Or. App. 546, 680 P. 2d 655 (1984), *review denied*, 298 Or. 553, 695 P. 2d 49 (1985), the court found the excited utterance exception inapplicable where there was a complete absence of evidence as to exactly when the attack took place and the victim had been in defendant's custody for nearly a month. There, a four-year-old female victim told her grandmother that her mother's boyfriend "hit me there" with his "thing down there" (pointing to her vaginal area). The trial court admitted the grandmother's testimony under the excited utterance exception, but the appellate court found that the time factor precluded application of that exception. Instead, the appellate court found the testimony properly admitted under the Rule 803 (24) "catchall" exception. We find *Hollywood* distinguishable. In *Hollywood*, the time of the assault was unable to be determined because the victim had been in the custody of the defendant for nearly a month prior to the victim's disclosure of the assault to her grandmother. In the instant case, the record reveals that the assaults took place on the weekend of 2 March 1984, with the victims reporting the assaults on Monday, 5 March 1984.

We believe that the girls' statements to Mrs. Davis on 5 March 1984 were of such a nature as to have been properly admitted under the Rule 803(2) excited utterance exception to the hearsay rule. In volunteering the information to her grandmother, Gloria said, "I have something to tell you. . . . I want you to come in the room. I am scared. . . . I want to tell you what Sylvester done [sic] to me." Although it is not entirely clear on exactly what night the event took place during that weekend, the trial court assumed it took place on the earliest night of the weekend, Friday night, 2 March 1984. The evidence tends to show that Gloria and Janell talked to Mrs. Davis on the morning and the afternoon of Monday, 5 March 1984, between two and three days of the event. Under these circumstances, then, we hold that Mrs. Davis' testimony was also admissible under the excited utterance exception of Rule 803(2). Neither party addressed the admissibility of the Rape Task Force volunteers' testimony under Rule 803(2). Therefore, we shall not do so here.

### III.

Having found the testimony of Ms. Glidden and Ms. Peterson not admissible under the Rule 803(4) exception (medical diagnosis or treatment) and noting that the State does not argue for its admissibility under Rule 803(2) (excited utterances), we turn now to the State's contention that this testimony was admissible as substantive evidence pursuant to Rule 803(24) (other exceptions). Often termed the "catchall" or "residual" hearsay exception, Rule 803(24) provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(24) Other Exceptions. — A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the inter-

ests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

The record indicates that the State provided notice to the defendant of its intention to introduce the statements of Ms. Glidden and Ms. Peterson. The written and oral notice included the names and addresses of these witnesses, as well as the "particulars" of the hearsay statements this testimony would contain. In a conversation among the district attorney, defense counsel, and the trial judge which took place between the jury charge and the announcement of the verdict, the district attorney again advised the trial court that this notice had been given. The judge asked defense counsel if this was correct, and counsel responded, "Judge, I was not contesting [the statements] on that basis, and what Mr. Easley says is correct."

The trial judge here did not specify on what basis he refused to limit the disputed testimony to corroboration. If he allowed the testimony into evidence pursuant to the Rule 803(24) exception, he did not say so on record. Consequently, there appear in the record no findings by the trial judge or any other indication that he analyzed the appropriateness of admitting this testimony in light of the specific requirements set out in Rule 803(24).

[7] Because of the residual nature of the Rule 803(24) hearsay exception and the Commentary's warning that "[t]his exception does not contemplate an unfettered exercise of judicial discretion,"[4]

---

4. The legislative history of Federal Rule of Evidence 803(24) reveals that the Senate Judiciary Committee cautioned that the exception should be invoked "very rarely, and only in exceptional circumstances." S. Rep. No. 1277, 93d Cong., 2d Sess. 20, *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7066. *See also* Lewis, *The Residual Exceptions to the Federal Hearsay Rule: Shuffling the Wild Cards*, 15 Rutgers L.J. 101 (1983); Sonenshein, *The Residual Exceptions to the Federal Hearsay Rule: Two Exceptions in Search of a Rule*, 57 N.Y.U.L. Rev. 867 (1982). *But see* Imwinkelried, *The Scope of the Residual Hearsay Exceptions in the Federal Rules of Evidence*, 15 San Diego L. Rev. 239 (1978) (urging a more liberal construction).

evidence proffered for admission pursuant to N.C.G.S. § 8C-1, Rule 803(24) ("other exceptions"), must be carefully scrutinized by the trial judge within the framework of the rule's requirements. It is the duty of the proponent of the proffered hearsay statement to alert the trial judge that the statement is being offered as a hearsay exception under Rule 803(24). Upon being notified that the proponent is seeking to admit the statement pursuant to that exception, the trial judge must have the record reflect that he is considering the admissibility of the statement pursuant to Rule 803(24). Only then should the trial judge proceed to analyze the admissibility by undertaking the six-part inquiry required of him by the rule. The trial judge must engage in this inquiry prior to admitting or denying proffered hearsay evidence pursuant to Rule 803(24).

[8]   A. Has proper notice been given?

When hearsay testimony is sought to be admitted as substantive evidence under Rule 803(24), the proponent must first provide written notice to the adverse party "sufficiently in advance of offering[5] the statement to provide the adverse party with a fair opportunity to prepare to meet the statement." The hearsay statement may not be admitted unless this notice (a) is in writing; and (b) is provided to the adverse party sufficiently in advance of offering it to allow him to prepare to meet it; and (c) contains (1) a statement of the proponent's intention to offer the hearsay testimony, (2) the "particulars" of the hearsay testimony, and (3) the name and address of the declarant.

Thus, a trial judge must make the initial determination that proper notice was duly given and must include that determination in the record; detailed findings of fact are not required. Should the trial judge determine that notice was not given, was inadequate, or was untimely provided, his inquiry must cease and the proffered hearsay statement must be denied admission under Rule 803(24).

---

5. Federal Rule of Evidence 803(24) requires that the notice be given sufficiently "in advance of the *trial or hearing*." (Emphasis added.) In all other respects, N.C.G.S. § 8C-1, Rule 803(24), is identically worded.

---

State v. Smith

---

B. Is the hearsay not specifically covered elsewhere?

If the trial judge determines that the statutory notice requirements have been met, he must next determine whether the "statement [is] not specifically covered by any of the foregoing exceptions . . . [Rule 803(1)-(23)]." Again, detailed findings of fact are not required, but the trial judge must enter his conclusion in the record. If the trial judge determines that the statement is covered by one of the other specific exceptions, that exception, not the catchall Rule 803(24), governs; admission pursuant to Rule 803(24) is not necessary, and the inquiry must end. If, however, the trial judge concludes that the hearsay statement is not specifically covered by any of the other 23 exceptions, he must so determine and proceed to the next inquiry.

C. Is the statement trustworthy?

Although a hearsay statement is not specifically covered by any of the 23 "pigeonhole" exceptions, it may be admissible under the residual exception if it possesses "circumstantial guarantees of trustworthiness" equivalent to[6] those required for admission under the enumerated exceptions. This threshold determination has been called "the most significant requirement"[7] of admissibility under Rule 803(24). Courts and commentators have struggled with the meaning of this requirement, and certain factors are acquiring recognition as significant in guiding the trial judge's determination of the proffered statement's trustworthiness. Among these factors are (1) assurance of personal knowledge of the declarant of the underlying event, *United States v. Barlow*, 693 F. 2d 954, 962 (6th Cir. 1982), *cert. denied*, 461 U.S. 945, 77 L.Ed. 2d 1304 (1983); *United States v. Carlson*, 547 F. 2d 1346, 1354 (8th Cir.) (applying Federal Rule 804(b)(5) ), *cert. denied*, 431 U.S. 914, 53 L.Ed. 2d 224 (1976); (2) the declarant's motivation to speak the truth or otherwise, *Huff v. White Motor Corp.*, 609 F. 2d 286, 292 (7th Cir. 1979); (3) whether the declarant ever recanted the testimony, *United States v. Barlow*, 693 F. 2d 954, 962 (6th Cir. 1982), *cert. denied*, 461 U.S. 945, 77 L.Ed. 2d 1304 (1983); and

---

6. The Commentary to Rule 803(24) explains that the statement's trustworthiness must be "within the spirit of the specifically stated exceptions."

7. M. Graham, Handbook of Federal Evidence § 803.24 (1981); McCormick on Evidence § 324.1 (3d ed. 1984) (central focus of the residual exception).

(4) the practical availability of the declarant at trial for meaningful cross-examination, M. Graham, Handbook of Federal Evidence § 803.24 (1981). *See also United States v. McPartlin*, 595 F. 2d 1321, 1350 (7th Cir.) (dictum), *cert. denied*, 444 U.S. 833, 62 L.Ed. 2d 43 (1979); 4 D. Louisell & C. Mueller, Federal Evidence § 472 (1980) ("the 'trustworthiness' of statements offered under Rule 803(24) is slightly less a matter of concern where the declarant in fact testifies and is subject to cross-examination").

None of these factors, alone or in combination, may conclusively establish or discount the statement's "circumstantial guarantees of trustworthiness." The trial judge should focus upon the factors that bear on the declarant at the time of making the out-of-court statement and should keep in mind that the peculiar factual context within which the statement was made will determine its trustworthiness.

In making his determination of whether the proffered statement possesses "equivalent circumstantial guarantees of trustworthiness," the trial judge must include in the record not only his conclusion but also his reasoning in reaching it. Findings of fact and conclusions of law as to the trustworthiness requirement must appear in the record. Again, if the trial judge examines the circumstances and determines that the proffered testimony does not meet the trustworthiness requirement, his inquiry must cease upon his entry into the record of his findings and conclusions, and the testimony may not be admitted pursuant to Rule 803(24). If the trial judge's analysis leads him to the conclusion that the trustworthiness element is satisfied, he must proceed to the next inquiry.

D. Is the statement material?

If the proffered statement is not specifically covered by any of the enumerated exceptions and has equivalent circumstantial guarantees of trustworthiness, it is still inadmissible unless the trial judge determines that it "is offered as evidence of a material fact." This requirement has been construed as a mere restatement of the requirement of relevancy set out in Rules 401 and 402. *See Huff v. White Motor Corp.*, 609 F. 2d 286, 294 (7th Cir. 1979); M. Graham, Handbook of Federal Evidence § 803.24 (1981). Although findings of fact need not be made, the trial judge must include in the record a statement that the proffered evidence is

offered as evidence of a material fact if he so finds. If not, the record should so reflect, and the inquiry should end.

E. Is the statement more probative on the issue than any other evidence which the proponent can procure through reasonable efforts?

The fifth inquiry is reached only if each of the preceding four have been answered in the affirmative. A hearsay statement is admissible under Rule 803(24) only if it "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." This requirement of "necessity" has been inherent in the analysis of hearsay exceptions long before even the Federal Rules of Evidence were codified. *See* V Wigmore on Evidence § 1421 (Chadbourn Rev. 1974). The requirement imposes the obligation of a dual inquiry: were the proponent's efforts to procure more probative evidence diligent, and is the statement more probative on the point than other evidence that the proponent could reasonably procure? 4 D. Louisell & C. Mueller, Federal Evidence § 472 (1980).

Where a declarant is available at trial, the degree of necessity to admit his or her hearsay statement through the testimony of another is greatly diminished. Usually, *but not always*, the live testimony of the declarant will be the more (if not the most) probative evidence on the point for which it is offered.[8] Because Rule

---

8. *See, e.g., United States v. Mathis,* 559 F. 2d 294 (5th Cir. 1977) (court faced with defendant's recalcitrant wife who, after making sworn statements and testifying before a grand jury as to defendant's involvement in the crime, refused to testify against him at trial. The court in that situation reasoned:

"The live testimony of the available witness, whose demeanor the jury would have been able to observe and whose testimony would have been subject to cross-examination, would have been of more probative value in establishing the truth than the bare statements transcribed by the ATF agents. *See California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 2d 489 (1970); *United States v. Williams,* 447 F. 2d 1285 (5th Cir. 1971); *United States v. Lynch,* 163 U.S. App. D.C. 6, 499 F. 2d 1011 (1974). Unlike the case in which the witness takes the stand, the use of the statements foreclosed any exploration of weaknesses in the witness' perception, memory, and narration of the matters asserted within the statements. While it has been contended that availability is an immaterial factor in the application of Rule 803(24), this argument is wide of the mark. Although the introductory clause of Rule 803 appears to dispense with availability, this condition re-enters the analysis of whether or not to admit statements into evidence under the last subsection of Rule 803 because of the requirement that the proponent use reasonable efforts to

803(24) allows hearsay evidence to be admitted "even though the declarant is available as a witness," the trial judge must, in this event, take care in documenting for the record his basis for finding that this "necessity" requirement is met. The record must reflect findings of fact and conclusions of law supporting the trial judge's determination as to this fifth inquiry. Should the trial court determine that the proffered evidence is not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," his inquiry must end, and the evidence may not be admitted under Rule 803(24). If, however, the trial judge determines that the "necessity" test is satisfied, he must move to the sixth inquiry.

F. Will the interests of justice be best served by admission?

The sixth and final inquiry under Rule 803(24) is whether "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence." The general purposes of the North Carolina Evidence Code are set out in N.C.G.S. § 8C-1, Rule 102, as follows: "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

After considering whether admission of the proffered evidence would best serve these purposes and the interests of justice, the trial judge must state his conclusion. Detailed findings of fact regarding this determination are not required so long as the trial judge includes in the record his analysis.

By setting out in the record his analysis of the admissibility of hearsay testimony pursuant to the requirements of Rule 803(24) as set forth above, the trial judge will necessarily undertake the serious consideration and careful determination contemplated by

procure the most probative evidence on the points sought to be proved. Rule 803(24), thus, has a built-in requirement of necessity. Here there was no necessity to use the statements when the witness was within the courthouse. The trial court erred in overlooking this condition of admissibility under Rule 803(24).").

*Id.* at 298-99.

We note that the presence of the declarant in the courthouse does not *necessarily* preclude a finding of necessity.

State v. Smith

the drafters of the Evidence Code. This thoughtful analysis will greatly aid in assuring that only necessary, probative, material, and trustworthy hearsay evidence will be admitted under this residual exception and will provide a sound framework for meaningful appellate review.

Our research has revealed that, in applying Federal Rule 803(24), the federal courts encourage[9] if not demand[10] that the trial courts make findings. Because admissibility of hearsay statements pursuant to the 803(24) residual exception is within the sound discretion of the trial court, appellate review of an assignment of error to that exercise of discretion is rendered virtually impossible[11] absent the inclusion in the record of the statements, rationale, or findings and conclusions as set forth herein. We hold that, before allowing the admission of hearsay evidence to be presented under Rule 803(24) (other exceptions), the trial judge must enter appropriate statements, rationale, or findings of fact and conclusions of law, as set forth herein, in the record to support his discretionary decision that such evidence is admissible under that rule. If the record does not comply with these requirements and it is clear that the evidence was admitted pursuant to Rule 803(24), its admission must be held to be error.

Because the language of Rule 803(24) does not itself specify how and in what detail the trial judge must "determine" its requirements, we have established the requirements set forth herein pursuant to this Court's residual supervisory power as par-

9. *United States v. Hinkson*, 632 F. 2d 382, 385 (4th Cir. 1980); *Huff v. White Motor Corp.*, 609 F. 2d 286, 291 (7th Cir. 1979); *United States v. Palacios*, 556 F. 2d 1359, 1363, n. 7 (5th Cir. 1977). *See also* S. Rep. No. 1277, 93d Cong., 2d Sess. 20, *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7066.

10. *United States v. Guevara*, 598 F. 2d 1094, 1100 (7th Cir. 1979); *United States v. King*, 16 M.J. 990, 992, n. 3 (A.C.M.R. 1983).

11. *United States v. Guevara*, 598 F. 2d 1094 (7th Cir. 1979). One treatise has stated that "resort to [803(24)] for the first time on appeal as the basis for challenging or supporting rulings below is inappropriate." 4 D. Louisell & C. Mueller, Federal Evidence § 472 (1980). *But see Huff v. White Motor Corp.*, 609 F. 2d 286, 291-92 (7th Cir. 1979) (Seventh Circuit Court of Appeals, after noting that findings by the district court would have "greatly aided" in reviewing a ruling of this nature under 803(24), stated that "we have little choice except to attempt to replicate the exercise of discretion that would be made by a trial judge in making the ruling." The circuit court went on to analyze the proffered testimony under Federal Rule 803(24) ).

tially expressed in Rule 2 of the North Carolina Rules of Appellate Procedure. We now consider the application of the rule announced herein to cases involving the admission or exclusion of evidence where the record reflects that the trial judge made his ruling on the basis of Rule 803(24). Because the effective date of the rules is recent (1 July 1984), there are probably few cases in the process of appellate review at this time. Our holding in this case will apply only to cases the trial of which begins after the certification date of this opinion. It may not be used as the basis for collaterally attacking any case which was tried prior to the certification date of this opinion or in any case in which no appeal was taken from the trial judgment. In those cases to which the rule established herein does not apply, the appellate courts will examine each appeal on a case-by-case basis to determine whether the ruling by the trial judge admitting or excluding evidence pursuant to Rule 803(24) may be sustained on the contents of the record on appeal. If the record will not support the ruling of the trial judge, his ruling will be determined to be error and the appellate court will then proceed to determine whether the error was reversible pursuant to the provisions of N.C.G.S. § 15A-1443.

[9] We now proceed to determine the question in the case at bar. As previously indicated herein, the trial judge denied defendant's motion to limit the Rape Task Force volunteers' hearsay testimony to corroboration and refused to give limiting instructions in his charge as tendered by defendant. We have previously noted that the testimony of these witnesses could not properly have been admitted as substantive evidence under either Rule 803(4) (medical diagnosis or treatment) or Rule 803(2) (excited utterances), the only other exceptions contended. The trial judge did not state, and the record does not reflect, that the evidence was admitted pursuant to Rule 803(24). The record reflects no statements, rationale, or findings and conclusions whatsoever concerning any requirement of the rule and thus does not support the trial judge's ruling which in effect allowed this testimony to be considered as substantive evidence. Because we are unable to find in the record on appeal any support for the admission of the testimony under Rule 803(24), we find that so much of this testimony as did not corroborate the victims' testimony at trial was inadmissible and thus its admission was error.

We now consider whether the error was reversible error. Our review of the transcript indicates that the portion of the volunteers' testimony relating to statements made by the children which was non-corroborative was Ms. Glidden's testimony that Gloria told her that Sylvester "put his finger in her 'butt.'" The only evidence of first-degree sexual offense against Gloria was Gloria's statements to others to the effect that Sylvester touched her in the area of her rectum. At trial, Gloria repeatedly denied that Sylvester had touched her anywhere except her vagina. Thus, Ms. Glidden's testimony, proffered pursuant to Rule 803(24), was in direct conflict with the testimony of the victim. Although the properly admitted *subsequent* testimony of the grandmother, Mrs. Davis (whom the jury probably viewed as an interested witness), was to the effect that Gloria had told her Sylvester had put his hand in her "butt," we find that the admission of Ms. Glidden's testimony to the same effect was highly prejudicial to the defendant. The testimony of this "disinterested" Rape Task Force volunteer obviously had great impact upon the jury, especially in the face of Gloria's denial at trial that the defendant had touched her anywhere except in her vagina. The prejudicial effect of this testimony requires us to arrest judgment on defendant's conviction for the first-degree sexual offense as to Gloria, 84CRS1377, and to grant a new trial on that charge.

IV.

[10] Defendant has made several additional assignments of error, none of which we find to have merit, but which we shall address briefly here. First, defendant contends that it was error to allow Dr. Woodworth, the examining physician, to give his opinion as to the cause of the trauma he observed during his examination of Gloria on 5 March 1984. The record reveals that, in response to questioning as to the cause of the injuries, Dr. Woodworth stated, "In my opinion it was a male penis." Defendant contends first that this statement was improperly admitted because it was unqualified by the words "could" or "might." Second, defendant contends that the statement was improper as an invasion of the province of the jury.

In *State v. Brown*, 300 N.C. 731, 268 S.E. 2d 201 (1980), this Court set out a three-part test for determining the admissibility of expert opinion testimony as to the cause of injuries. The sec-

ond prong of that test allows the witness to testify only that an event *could* or *might* have caused the injury unless his expertise leads him to an unmistakable conclusion. *Id.* at 733, 268 S.E. 2d at 203. Since *Brown* was decided, the North Carolina Evidence Code, Chapter 8C of the North Carolina General Statutes, has come into effect. As we stated earlier, the trial of the instant case was governed by the "new" Evidence Code. N.C.G.S. § 8C-1, Rule 705, eliminates the requirement that experts' opinion testimony be in response to a hypothetical question. Rule 704 provides that "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In this case, an "ultimate issue" was whether the victims' injuries were caused by a male sex organ. As to Gloria, Dr. Woodworth testified that, in his opinion, the injuries were caused by "a male penis."

We hold that Dr. Woodworth's failure to qualify his opinion by the words "could" or "might" did not render this testimony as to an ultimate issue improper. We note parenthetically that, on cross-examination, Dr. Woodworth agreed that the injuries he observed during his examination of Gloria could have been caused by some other object the same size and shape as a penis. We also note that Dr. Woodworth did not testify that Gloria had been raped, nor that the defendant raped her. The rule that an expert may not testify that such a particular legal conclusion or standard has or has not been met remains unchanged by the new Evidence Code, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness. 3 D. Louisell & C. Mueller, Federal Evidence § 395 (1979). *See also State v. Robinson,* 310 N.C. 530, 538, 313 S.E. 2d 571, 577 (1984).

[11] Defendant next contends it was reversible error to admit the testimony of Dr. James Robert Forstner in which he stated that, in his opinion, it was "highly likely" that Gloria and Janell had had sexual intercourse. Defendant argues that Dr. Forstner's opinion was not based on any personal examination of the victims but was based solely on his review of Dr. Woodworth's medical reports. In addition, defendant contends that it was error to allow Dr. Forstner to testify as to his conversations with Drs. Frank Loder and Suzanne White regarding the implications of the presence of protozoa trichomonas in very young females.

First, defendant erroneously concludes that a medical expert's testimony is limited to conditions he has personally observed. The correct limitation, that facts must be "within his knowledge," *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980), is quite different. Dr. Forstner gave an expert medical opinion based upon the contents of Dr. Woodworth's medical reports and information supplied to him by his colleagues, Drs. Loder and White. Based upon that information, Dr. Forstner relied on his personal knowledge and expertise as Child Medical Examiner of Brunswick County to form an opinion as to the likelihood that Gloria and Janell had had sexual intercourse. His opinion was based in part on the statements of Drs. Loder and White that they were unaware of a case of trichomonas in a prepubertal female who had not engaged in sexual intercourse.

We find that these bases upon which Dr. Forstner relied in forming his opinion were of the type reasonably relied upon by experts in the field in forming opinions upon the subject. N.C.G.S. § 8C-1, Rule 703. Therefore, we hold that the trial court did not err in allowing Dr. Forstner to testify to his opinion as to the likelihood that the victims had engaged in sexual intercourse.

[12] Defendant's next contention is that there was insufficient evidence upon which to submit all the indictments to the jury and to sustain the jury's verdicts. We have held that "[b]efore the issue of a defendant's guilt may be submitted to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of the offense charged and that the defendant was the perpetrator." *State v. Hamlet*, 312 N.C. 162, 166, 321 S.E. 2d 837, 842 (1984); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). "Substantial evidence must be existing and real but need not exclude every reasonable hypothesis of innocence." *Hamlet*, 312 N.C. at 166, 321 S.E. 2d at 837; *State v. Williams*, 308 N.C. 47, 64, 301 S.E. 2d 335, 346, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177 (1983). Our review of the evidence properly admitted at trial leads us to the conclusion that there is no merit in this assignment of error.

[13] Finally, defendant contends that the trial court erred in failing to instruct the jury as requested on the lesser-included offenses of attempted first-degree rape and attempted first-degree sexual offense as to both children. The general rule is that the

trial court must only so instruct when there is evidence from which the jury could find that the defendant committed the lesser offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). Where there is evidence of some penetration sufficient to support a conviction of rape and the defendant denies having any sexual relations with the victim, the defendant is not entitled to a charge of attempted rape. *State v. Wood*, 311 N.C. 739, 319 S.E. 2d 247 (1984); *State v. Horner*, 310 N.C. 274, 311 S.E. 2d 281 (1984). We find that Gloria's testimony, coupled with the medical evidence presented by Dr. Woodworth, constituted sufficient evidence of a penetration to support a first-degree rape conviction. Likewise, Janell's testimony was sufficient to support a conviction for first-degree sexual offense; no medical evidence of penetration, such as bruising or tearing, is required to support such a conviction. *Cf. State v. Ashley*, 54 N.C. App. 386, 283 S.E. 2d 805 (1981), *cert. denied*, 305 N.C. 153, 289 S.E. 2d 381 (1982). Therefore, we hold that, there being insufficient evidence to support a finding that the defendant committed any lesser offenses, the trial court did not err in failing to instruct the jury on the lesser offenses of attempted rape and attempted first-degree sexual offense.

## V.

In summary, we hold that there was no error in defendant's convictions for the first-degree rape of Gloria Ogundeji and the first-degree sexual offense of Janell Smith. Defendant is entitled to a new trial on the charge of first-degree sexual offense as to Gloria Ogundeji.

No. 84CRS1376 — First-Degree Rape — no error.

No. 84CRS1377 — First-Degree Sexual Offense — new trial.

No. 84CRS1611 — First-Degree Sexual Offense — no error.

Justice BILLINGS did not participate in the consideration and decision of this case.