NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Plaintiff v. MATTHEW J. CROMARTIE, JR., Individually and as Co-trustee of The Matthew And Annie Lee Cromartie Trust; JOYCE GOODEN; ALEXANDER CROMARTIE and wife MARTHA CROMARTIE; MARGARET CROMARTIE; BERNARD BELL; FRANCENIA CROMARTIE HORNE; and KNOWN AND UNKNOWN, BORN AND UNBORN HEIRS OF MATTHEW J. CROMARTIE, SR., Defendants

No. COA10-709

(Filed 2 August 2011)

## 1. Eminent Domain—inverse condemnation—substantial compliance with statutory requirements

The trial court did not err by denying plaintiff Department of Transportation's motion to dismiss a counterclaim for inverse condemnation. Defendants may assert an inverse condemnation claim for a further taking during an ongoing condemnation proceeding. Further, defendants substantially complied with N.C.G.S. § 136-111.

2. **Eminent Domain—inverse condemnation—sufficiency of findings of fact**

The trial court erred by determining that plaintiff Department of Transportation had inversely condemned a .832-acre parcel. The trial court's factual findings had no competent basis in evidence, and thus, the order was reversed and remanded for further proceedings.

Appeal by plaintiff from orders entered 30 November 2009 and 2 December 2009 by Judge James F. Ammons, Jr., in Bladen County Superior Court. Heard in the Court of Appeals 12 January 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Hilda Burnett-Baker, for the Department of Transportation.*

*Johnson & Johnson, PLLC, by William L. Johnson, III, for defendants.*

ELMORE, Judge.

The Department of Transportation (DOT or plaintiff) appeals an order denying its motion to dismiss plaintiffs' counterclaim for inverse condemnation and another ruling in summary judgment that plaintiff had inversely condemned defendants' land. After careful review, we affirm.

## I. Background

In its 19 November 2008 complaint, DOT named Matthew J. Cromartie, Jr., Annie Lee Cromartie, Joyce Gooden, Alexander Cromartie, Martha Cromartie, Margaret Cromartie, Bernard Bell, Francenia Cromartie Horne, co-trustees of the Matthew and Annie Lee Cromartie Trust, and all heirs of Matthew J. Cromartie, Sr. (together, defendants), as those persons having an interest in the land at issue. The complaint stated that it was necessary to condemn or appropriate portions of a certain plot of land belonging to defendants: (1) to condemn a 1.80-acre tract located next to the NC 87 Bypass in Bladen County and (2) to take 3,639 square feet for a temporary slope easement. The land involved was part of a larger 9.47-acre tract; by the two takings, the remaining tract was divided into two parcels. One of the parcels was 6.85 acres, and the other was .832 acres. As required by N.C. Gen. Stat. § 136-103(d), DOT deposited with the clerk of superior court $41,600.00 as just compensation for the taking.

Only certain defendants filed answers; those who did filed amended answers and counterclaims on 8 October 2009, admitting the allegations in the complaint and alleging that DOT had inversely condemned the .832 acre parcel because DOT's actions significantly and permanently affected the value of the land. Defendants stated that "[t]he acreage is too small to be farmed or developed [and] [t]he shape is irregular which compounds its unusefulness." In addition, the answering defendants asserted that Steve Bell, who was not a named defendant, had an interest in the property.

Defendants tendered the affidavit of Bobby Dowless, a realtor from Dublin, North Carolina. Mr. Dowless stated that the best use of the .832-acre parcel is commercial development, but that the configuration of the lot made it unworkable and unmarketable as a commercial development property. Further, Mr. Dowless concluded that the parcel could not be combined with adjoining property because of zoning orders and that the damage to the .832 acre parcel was 100% of fair market value.

Defendants tendered two additional affidavits from Mr. Israel Cromartie and Mr. Dale Holland. Mr. Cromartie, a farmer who was not a party or owner, viewed the .832-acre parcel and opined that it was too small to be farmed. Mr. Holland, who holds a certification from the American Institute of Certified Planners (A.I.C.P.), opined that the injury to the parcel was substantial and permanent and applies to 100% of the .832-acre parcel. He further stated that "[t]he irregular shape and small size of the parcel left to Mr. Cromartie has the effect of substantially depriving defendants of all beneficial enjoyment[.]"

On 16 November 2009, the superior court heard defendants' motion for a hearing pursuant to N.C. Gen. Stat. § 136-108. On 30 November 2009, the court issued an order inversely condemning the .832-acre parcel. On 2 December 2009, the trial court issued an order denying DOT's motion to dismiss defendants' counterclaims. DOT appeals both orders. Further relevant facts are developed below.

## II. Analysis

### A. Denial of Plaintiff's Motion to Dismiss Counterclaim

[1] Plaintiff first argues that the trial court erred in denying its motion to dismiss the counterclaim for inverse condemnation. We disagree.

1. Standard of Review

As this Court has observed when considering a motion to dismiss:

> [t]he court must construe the complaint liberally and 'should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.' *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.

*Leary v. N.C. Forest Products, Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).

2. Substantive Law

N.C. Gen. Stat. § 136-108 provides in relevant part:

> After the filing of the plat, *the judge*, upon motion and 10 days' notice by either the Department of Transportation or the owner, *shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken.*

N.C. Gen. Stat. § 136-108 (2009) (emphasis added).

N.C. Gen. Stat. § 136-111, the statute permitting the State to be sued for inverse condemnation, states in relevant part:

> Any person whose land or compensable interest therein has been taken by an intentional act or omission of the Department of Transportation and no complaint and declaration of taking has been filed by said Department of Transportation may . . . file a complaint in the superior court setting forth the names and places of residence of the parties, so far as the same can by reasonable diligence be ascertained, who own or have, or claim to own or have estates or interests in the said real estate and if any such persons are under a legal disability, it must be so stated, together with a statement as to any encumbrances on said real estate; said complaint shall further allege with particularity the facts which constitute said taking together with the dates that they allegedly occurred; said complaint shall

describe the property allegedly owned by said parties and shall describe the area and interests allegedly taken.

N.C. Gen. Stat. § 136-111 (2009).

In order to recover for inverse condemnation, a complainant must show:

an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; a taking has been defined as entering upon private property for more than a momentary period, and under warrant of color of legal authority, devoting it to public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.

*Long v. City of Charlotte,* 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982) (internal quotations omitted). "While the term 'actual interference' does not require actual physical invasion, actual dispossession or even a physical touching, the term does require that plaintiffs show interference with the use and enjoyment of their property substantial enough to reduce market value." *Twitty v. State,* 85 N.C. App. 42, 54, 354 S.E.2d 296, 304 (1987). "A reduction in market value, standing alone, does not constitute an 'actual interference with or disturbance of' plaintiffs' use and enjoyment of their property. *Long* requires an actual interference (the cause) substantial enough to reduce the market value of plaintiffs' property (the effect)." *Id.*

"Property owners may choose to bring a separate action for inverse condemnation pursuant to G.S. 136-111 when there is a further taking by the State after the initiation of the original condemnation action." *Lea Co. v. North Carolina Bd. of Transp.,* 308 N.C. 603, 633, 304 S.E.2d 164, 183 (1983). However, "principles of judicial economy dictate that the owners of the taken land may allege a further taking by inverse condemnation in the ongoing proceedings." *City of Greensboro v. Pearce,* 121 N.C. App. 582, 587-88, 468 S.E.2d 416, 420 (1996) (quoting *Department of Transportation v. Bragg,* 308 N.C. 367, 371 n.1, 302 S.E.2d 227, 230 n.1 (1983)).

3. Application

Here, plaintiff first contends that defendants had no right to sue DOT for inverse condemnation because N.C. Gen. Stat. § 136-111 specifically applies to instances where there is a taking but DOT does

not file a complaint and declaration of taking, and, in the present case, DOT filed a complaint and declaration of taking on 19 November 2008. Plaintiff did indeed file a complaint and declaration of taking; however, the .832-acre parcel in question was not part of the original condemnation action. Defendants asserted DOT took the .832-acre parcel in addition to the area condemned in the original condemnation action. As this Court has made clear, defendants may assert an inverse condemnation claim for a further taking during the ongoing proceedings. *See Pearce*, 121 N.C. App. at 587-88, 468 S.E.2d at 420. Therefore, defendants' assertion of a claim against DOT for inverse condemnation of the .832-acre parcel as a counterclaim within the original condemnation action was proper. We dismiss this claim of error.

Plaintiff next claims that defendants' claims should be dismissed because they have not complied with multiple provisions of N.C. Gen. Stat. § 136-111 governing defendants' right to bring an inverse con-demnation claim so that their claim is barred by sovereign immunity. We disagree and address each of their procedural contentions in turn.

As to the requirements of N.C. Gen. Stat. § 136-111, plaintiff first complains that defendants' answer to the State's condemnation action in which they make a claim for inverse condemnation did not "allege with particularity the facts which constitute [the taking in question]" or "the dates they allegedly occurred" or the "property allegedly owned by said parties . . . and the area and interests allegedly taken." We disagree.

Looking to the record in this case, we find that defendants' answer in the case includes *inter alia*: assertions that the condem-nation action identified in the State's plat attached as an exhibit to the complaint in the condemnation action has deprived them of all of the "bundle of rights" associated with the additional .832 acres for which they claim inverse condemnation, including limitation of access and impossibility of use for farming or development, due to "DOT's deci-sion to split the land in a way and manner devoid of consideration to the Defendants." In short, defendants' answer alleges a total depriva-tion of all economic use of .832 acres, identified by reference to the State's own plat filed in an ongoing action. Such deprivation was expressly alleged to have occurred contemporaneously with the State's condemnation of another portion of the same tract—"It is admitted that Plaintiff has condemned the area depicted on the plat map attached to the complaint. Defendants are informed and believe additional area is condemned and the state should file additional

pleadings to condemn a certain [.832] acres." From our review of the record and, "construing the complaint liberally," *Leary*, 157 N.C. App. at 400, 580 S.E.2d at 4, the complaint alleges sufficient facts to both state a prima facie claim of inverse condemnation and satisfy the dictates of N.C. Gen. Stat. § 136-111.

Plaintiff further complains that defendants failed to file a memorandum of action contemporaneously with their complaint in accordance with N.C. Gen. Stat. § 136-111, which requires in relevant part the filing of a memorandum of action with the register of deeds' office in all relevant counties, which includes:

(1) The names of those persons who the plaintiff is informed and believes may have or claim to have an interest in said lands and who are parties to said action;

(2) A description of the entire tract or tracts affected by the alleged taking sufficient for the identification thereof.

(3) A statement of the estate or interest in said land allegedly taken for public use; and

(4) The date on which the plaintiff alleges the taking occurred, the date on which said action was instituted, the county in which it was instituted and such other reference thereto as may be necessary for the identification of said action.

N.C. Gen. Stat. § 136-111 (2009). In the present action, defendants filed a memorandum of action which included *inter alia*: as to the "the names of those persons who the plaintiff is informed and believes may have or claim to have an interest in said lands and who are parties to said action," the names of Matthew and Annie Cromartie; Alexander and Martha Cromartie; Bernard and Barbara Bell; and Steven Bell, who the document indicates owns an undivided interest in the property and has not filed an answer in the action; as to the "description of the entire tract or tracts affected by the alleged taking," a description of the property in question including its tract number and book and page number in the Bladen County registry; as to a "statement of the estate or interest in said land allegedly taken for public use," a statement that the parties have a fee simple interest in the property; and as to the "date on which the plaintiff alleges the taking occurred," "the later of [the date] of the filing of the lawsuit, November 19, 2008, or the last date of the construction of the site." Defendants' memorandum of action was substantively adequate. *See* N.C. Gen. Stat. § 136-111 (2009). Though plaintiffs also contend that

the memorandum of action in this case was defective because it was not filed contemporaneously with the complaint in this instance, we are not persuaded. As the land in controversy had already been noticed by plaintiff in relation to their initial condemnation action and the memorandum of action in this case was filed 9 November 2009, a week before the hearing in question, we are satisfied that all proper parties to the lawsuit were on notice of the controversy in question and that defendants were in substantial compliance with N.C. Gen. Stat § 136-111.

For the reasons above, we affirm the trial court's order denying DOT's motion to dismiss the counterclaim for inverse condemnation.

**B. Determination that Plaintiff Inversely Condemned the .832 Acre Parcel**

[2] Plaintiff also argues that the trial court erred in determining that DOT had inversely condemned the .832-acre parcel. We agree.

1. Standard of Review

"Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citations omitted). However, those findings of fact must be "supported by competent evidence." *Munchak Corp. v. Caldwell*, 301 N.C. 689, 273 S.E.2d 281 (1981) (citing *Woods-Hopkins Contracting Co. v. Ports Authority*, 284 N.C. 732, 202 S.E.2d 473 (1974), and *Cotton v. Cotton*, 269 N.C. 759, 153 S.E.2d 489 (1967)). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

2. Substantive Law

The Fifth Amendment to the United States Constitution provides, in pertinent part, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. "[A]lthough the North Carolina Constitution does not contain an express provision prohibiting the taking of private property for public use without payment of just compensation, th[e] [North Carolina Supreme Court] has inferred such a provision as a fundamental right integral to the 'law of the land' clause in article 1, section 19 of our Constitution." *Finch v. City of Durham*, 325 N.C. 352, 362-63, 384 S.E.2d 8, 14 (1989) (citing *Long v. City of Charlotte*, 306 N.C. 187, 196, 293 S.E.2d 101, 107-08 (1982)).

"It is a well settled constitutional principle that actual physical occupation or even touching is not required to support a finding that a taking has occurred." *City of Greensboro v. Pearce,* 121 N.C. App. 582, 585, 468 S.E.2d 416, 418 (1996) (citing *Adams Outdoor Advertising v. N.C. Dept. of Transportation,* 112 N.C. App. 120, 122, 434 S.E.2d 666, 667 (1993)). "[T]here need only be a substantial interference with elemental rights growing out of the ownership of the property." *Long v. City of Charlotte,* 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982).

The United States Supreme Court has held that "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking[]" regardless of the public ends to be achieved. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 120 L. Ed. 2d 798, 815 (1992) (emphasis in original).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2009). Hearsay is not to be admitted into evidence, except as provided by statute or by the evidentiary rules. N.C. Gen. Stat. § 8C-1, Rule 802 (2009).

3. Application

We begin with plaintiff's assertion that the action in this case is improper because "the power to take private property is in every case limited to such and so much property as is necessary for the public use in question." *N.C. State Highway Comm'n v. Farm Equip. Co.,* 281 N.C. 459, 189 S.E.2d 272 (1972). Plaintiff further asserts that the trial court may not substitute its judgment for that of DOT and cites *State Highway Commission v. Greensboro City Board of Education,* 265 N.C. 35, 48, 143 S.E.2d 87, 97 (1965), for the proposition. We first note that in that case, the question was one of a trial court's order reversing the condemnation of property wherein the trial court made findings of fact regarding the proper plan for the proposed highway. *Id.* at 47; 143 S.E.2d at 97. Here, however, the trial court made no such findings, nor does the trial court in any way seek to substitute its opinion of what plaintiff should condemn for that of the plaintiff. The question here is what has already been taken by the condemnation in question, *i.e.,* the .832 acres. As such, comparison to that case is inapposite. Turning to the question of plaintiff's inability to take title to the land in question, we again find that the question is

not one of what plaintiff may take, but what it has already taken as a by-product of its properly exercised authority of eminent domain, the remedy for which when the burden on a parcel is total is inverse condemnation. *Long*, 306 N.C. at 199, 293 S.E.2d at 109.

The trial court made the following relevant findings of fact in its order of 30 November 2009, granting defendants' motion for a finding of inverse condemnation:

> 20. The .832 acres is controlled access along the Martin Luther King Drive and the Elizabethtown bypass. A fence is erected along Martin Luther King Drive. The .832 acres is affected by five corners.

> 21. Egress and ingress is only possible along the "old" Martin Luther King Drive which is now a dead end street. This is also the southern most line of the .832 acre parcel. Ingress and egress is extremely limited and substantially burdened by the configuration of the .832 acre parcel.

> 22. The Court finds that the .832 acre parcel is close to three commercial buildings: Elizabethtown Farm Bureau, Star Telephone, and Bladen Funeral Home. Elizabethtown Farm Bureau office is 7,495 square feet. The Star Telephone building is 7,360 square feet. The Bladen Funeral Home building is 10,000 square feet.

> 23. A commercial building of the foregoing sizes will not fit on the .832 acres and comply with the Elizabethtown zoning ordinance.

> 24. The .832 acres is zoned Bypass Commercial (BC). The adjacent property is owned by R&D properties, Inc. and is zoned Residential Agricultural (RA). Present zoning would not allow the .832 acre lot and the R&D tract to be combined in commercial use.

> 25. The Court finds that even if it were possible to build a 5872 square foot building on the lot as depicted in "Exhibit A" of the affidavit of Dale Holland, AICP, that it would not be economically desirable to build such a building due to the impossibility of situating parking closest to the bypass.

> 26. The irregular shape and small size of the parcel left to Defendants has the effect of substantially depriving Defendants of all beneficial enjoyment.

27. The right to develop the .832 acre parcel is substantially impaired.

28. The option to productively further subdivide the parcel is extremely limited given the irregular shape, extremely small size, and limited right of way access.

29. The requirement to make the parcel comply with the existing zoning ordinance results in substantial interference with use and enjoyment of the parcel.

30. The injury done to the .832 acre parcel is not minor or incidental; it is substantial and permanent.

31. The injury done applies to 100% of the parcel.

32. The present configuration of the lot has the unfortunate effect of significantly limiting Defendants' options for maximum utilization of the property.

33. The future possibility of development or subdividing the parcel is substantially impaired.

34. The Court finds that the property is not marketable due to extremely small size, irregular shape, restricted access, and design complications.

At the trial court's hearing of 16 November 2009, it heard arguments of counsel; the in-person testimony of Matthew Cromartie; affidavits of Israel Cromartie, a farmer; Bobby Dowless, a realtor; and Dale Holland, a planner. The trial court also had before it the map and plats contained in the file and bench briefs of both plaintiffs and defendants.

Plaintiff is correct in asserting that the affidavits presented to the trial court were hearsay. See N.C. Gen. Stat. § 8C-1, Rule 801 (2009). As we have noted, hearsay may be admitted into evidence only as provided by statute or by the evidentiary rules. N.C. Gen. Stat. § 8C-1, Rule 801 (2009). Defendant, however, argues that the affidavits in question were properly admitted into evidence by the action of Rule 803(24). That rule of evidence allows for the admission of testimony if the statement is offered as evidence of a material fact, the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and the general purposes of these rules and the interest of justice will best be served by admission of the statement into evi-

dence. N.C. Gen. Stat. § 8C-1, Rule 803(24) (2009). The rule further requires that notice be given to the opposing party, "to provide the adverse party with a fair opportunity to prepare to meet the statement." N.C. Gen. Stat. § 8C-1, Rule 803(24) (2009). Our Supreme Court has mandated that when a trial judge is considering the admission of evidence under Rule 803(24) he must "have the record reflect that he is considering the admissibility of the statement pursuant to" N.C. Gen. Stat. § 8C-1, Rule 803(24), and "set out in the record his analysis of the admissibility of hearsay evidence pursuant to the requirements of [N.C. Gen. Stat. § 8C-1,] Rule 803(24)" so as to ensure that he "undertake[s] the serious consideration and careful determination contemplated by the drafters of the Evidence Code." *State v. Smith*, 315 N.C. 76, 92-97, 337 S.E.2d 833, 844-47 (1985). Not to do so, if "it is clear that the evidence was admitted pursuant to Rule 803(24), . . . must be held to be error." *Id.* at 97, 337 S.E.2d at 47.

A careful review of the record in this case shows no announcement of the admission of evidence under Rule 803(24) as required by *Smith* nor any consideration by the trial court of the substantive mandates of the Rule itself. As no other hearsay exception is conceptually applicable to the affidavits in question and the trial court did not seek to apply any, the admission of these affidavits could only have been by reliance on Rule 803(24) and, lacking the proper procedural safeguards, "must be held to be error." *Id.*

Aside from that objection to the admission of the affidavits in this case, we also do not believe that the information contained in the affidavits has "circumstantial degrees of trustworthiness" "equivalent" to those typical of other hearsay exceptions. N.C. Gen. Stat. § 8C-1, Rule 803(24) (2009). Although the Supreme Court indicated in *State v. Nichols*, that the trial judge should consider a number of factors in determining whether a hearsay statement possesses sufficient indicia of trustworthiness to be admitted under [N.C. Gen. Stat. § 8C-1, Rule 803(24)]," including "(1) the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth; and (3) whether the declarant recanted and (4) the reason, within the meaning of [N.C. Gen. Stat. § 8C-1, Rule 803(24)]," it also cautioned that "this list is not exclusive" and "other factors may be considered where appropriate." 321 N.C. 616, 624-25, 365 S.E.2d 561, 567-68 (1988) (citing *State v. McLaughlin*, 316 N.C. 175, 179, 340 S.E.2d 102, 105 (1986)). Although it is evident the affiants had personal knowledge of the information contained in their affidavits, we know nothing of their motivation to speak the truth or of the reasons for their failure

to testify at the hearing held before the trial court. Further, a great deal of the information contained in their affidavits is not corroborated by other admissible evidence, such as the information concerning the zoning regulations applicable to the .832 acre tract and the extent to which a commercial building could reasonably be constructed on the property. These deficiencies undermine the "trustworthiness" of the affidavits and we find that even had the proper procedure been followed, they would fail this requirement.

Further, we see no indication that the evidence presented through the use of these affidavits was "more probative on the point for which it was offered than any other evidence which the proponent can procure through reasonable efforts." N.C. Gen. Stat. § 8C-1, Rule 803(24) (2009). In this instance, the record is devoid of any indication that defendants made any effort to procure the attendance of the affiants at the hearing or provided any explanation for their inability to make the affiants available for cross-examination at that time. From our review of the record, we do not believe that defendants made "reasonable efforts" to procure further or other evidence in support of their case and so find that again, were these affidavits properly admitted procedurally, they would not have satisfied this requirement.

Though the preference of the appellate court is to "presume that the [trial] court disregard[ed] the incompetent evidence" and will "sustain" the trial court's findings if they are supported by competent evidence," *Caldwell*, 301 N.C. at 694, 273 S.E.2d at 285, we cannot do so in this case. From our careful review of the record, we see that the trial court specifically stated that it considered the contested affidavits in its decision. Aside from that fact, almost all of the trial court's findings, including those pertaining to the proximity between the .832 acre tract and various commercial buildings, the ability of the .832 acre tract to accommodate similar commercial structures, the economic undesirability of locating a commercial building on the .832 acre tract for parking-related reasons, and the ability of the current owners to make use of their .832 acre tract in light of the current zoning rules, are drawn exclusively from information contained in the challenged affidavits. As a result, we find that the factual findings of the trial court have no competent basis in evidence and, as a result that the conclusions of law drawn therefrom, having no factual underpinnings, are improper. The trial court's order determining the issue of inverse condemnation for the defendant in this case is reversed and remanded to the Bladen County Superior Court for further proceedings to determine the inverse condemnation issue.

### III. Conclusion

For the foregoing reasons, we affirm the decision of the trial court with respect to its denial of plaintiff's motion to dismiss, reverse the trial court's order determining that an inverse condemnation has occurred in this case, and remand to the trial court for further proceedings on that issue.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Judges STEELMAN and ERVIN concur.