CALABRIA, Judge.
Respondent-parents (collectively, "Respondents") appeal from an order adjudicating the minor children M.A.E. ("Eddie")[1] and K .M.E. ("Eve") abused and neglected juveniles and adjudicating the minor child E.G.H. ("Harriet") a neglected juvenile. We affirm.
I. Background
Respondent-mother ("Mother") is the mother of all three juveniles and is married to Respondent-father D.H. ("Respondent D.H ."), who is Harriet's biological father.[2] At the time Iredell County Department of Social Services ("DSS") became involved with the family, the juveniles were living with Mother and Respondent D.H. in Iredell County. Respondent-father J.E. ("Respondent J.E.") is Eddie and Eve's biological father and Harriet's legal father, and he resides in South Carolina.
On 13 May 2013, DSS filed juvenile petitions seeking adjudication of twelve-year-old Eddie, eight-year-old Eve, and six-year-old Harriet as abused and neglected. According to Child Protective Services ("CPS") reports, DSS alleged Eddie was sleeping on the streets "due to the fighting in the home" and Mother and Respondent D.H.'s alcohol abuse; that Respondent D.H.'s spankings left "marks and bruises" on Eddie and Eve; and that Eve had disclosed that Eddie repeatedly sexually abused her and Harriet. Eve reported, inter alia,that Eddie "takes his pants off and private out and puts it in her butt[,]" "sucks on her chest[,]" and that she "saw 'gooey stuff' come from his penis [and] onto [her] Teddy Bear." A subsequent investigation by DSS confirmed that Eddie repeatedly sexually abused Eve and that Eve had reported the abuse to Mother, Respondent D.H., and Respondent J.E. Eddie admitted "that he put his 'dick' in [Eve's] butt" but denied touching Harriet. Eddie also stated that Respondent D.H. "beat him bad recently leaving marks up and down his back[,]" and that Mother "was aware but did not do anything."
On 10 May 2013, during an emergency assessment meeting at DSS, Respondents "admitted to having knowledge of the sexual abuse of the girls by [Eddie] but did nothing to protect them from the ongoing abuse." The report stated that Respondents "admitted they did not report the abuse for fear that they would be arrested and the children would be removed from the home." Moreover, "[n]umerous extended family members knew of the abuse as well but failed to report it or protect the children." Mother and Respondent D.H. further acknowledged spanking the minor children, which had "on rare occasions left marks" on them, and they also acknowledged frequently arguing in their presence. As a result of its investigation, DSS obtained non-secure custody of the three children on 13 May 2013.
Prior to the adjudicatory hearing, DSS filed two motions seeking to introduce into evidence a series of hearsay statements made by the minor children:
(1) Eve's statements to DSS social worker Carol Roulhac ("Ms.Roulhac") at Eve's elementary school on 8 May 2013;
(2) Eve and Harriet's videotaped statements to forensic interviewer Colleen Medwid ("Ms.Medwid") at the Dove House Children's Advocacy Center on 9 May 2013;
(3) Eve and Harriet's statements to their Aunt, Peggy Brown ("Aunt Peggy") at her home on various dates;
(4) Eddie's statements to Ms. Roulhac and Mooresville Police Detective John Vanderbilt ("Detective Vanderbilt") at Eddie's residence on 8 May 2013;[3]
(5) Eddie's videotaped statements to Detective Todd Marcum ("Detective Marcum") and Detective Vanderbilt at the Mooresville Police Department ("MPD") on 9 May 2013;
(6) Eddie's videotaped statements to Detective Marcum and Detective Amy Dyson ("Detective Dyson") at the MPD on 10 May 2013.
DSS sought introduction of the statements under the residual exception to the hearsay rule in N.C. Gen.Stat. § 8C-1, Rule 803(24).
After hearing the evidence and arguments of the parties, the trial court admitted the following statements pursuant to Rule 803(24) :(1) Eve's statements to Ms. Roulhac at school on 8 May 2013; (2) Eve's statements to Ms. Medwid at the Dove House on 9 May 2013; (3) Eddie's statements to Ms. Roulhac and Detective Vanderbilt at his residence on 8 May 2013; and (4) Eddie's statements to Detectives Marcum and Vanderbilt at the MPD on 9 May 2013. The court found these statements possessed circumstantial guarantees of trustworthiness and were more probative on relevant issues than any other evidence available to DSS through reasonable efforts. It further found that their admission would serve the interest of justice. The court declined to admit Harriet's statements to Ms. Medwid at the Dove House, Eve and Harriet's statements to Aunt Peggy, and Eddie's 10 May 2013 statements to Detectives Dyson and Marcum, finding that they lacked both the indicia of trustworthiness and the probative value required for admission under Rule 803(24).
After an adjudicatory hearing, the trial court entered an adjudication order on 21 October 2014. The trial court concluded that Eddie and Eve were abused juveniles, "in that [their] parent ... or caretaker has committed, permitted, or encouraged the commission of a sex offense [by,] with[,] or upon [them] in violation of the criminal law, and has created or allowed to be created serious emotional damage to the juvenile[s]." The trial court further concluded that each of the three minor children were neglected juveniles in that they do "not receive proper care, supervision, or discipline from [their] parent ... or caretaker," and "live[ ] in an environment injurious to [their] welfare."
After a dispositional hearing, the trial court entered a disposition order on 19 November 2014 continuing DSS custody of all three children. The trial court found that any visitation by Respondents would be contrary to the children's best interests "and will likely impede and/or cause a regression in the progress they have made in therapy." The court further determined that DSS should cease efforts toward reunification of the children with Respondents since such efforts "would be futile and ... inconsistent with the juveniles' health, safety, and need for a safe permanent home within a reasonable period of time[,]" and that Respondents "have subjected these juveniles to aggravating circumstances as defined in N.C. [Gen.Stat.] § 7B-101(2)." SeeN.C. Gen.Stat. § 7B-101(2) (2013) (defining aggravated circumstances as "[a]ny circumstance attending to the commission of an act of abuse or neglect which increases its enormity or adds to its injurious consequences, including ... sexual abuse."); see alsoN.C. Gen.Stat. §§ 7B-507(b)(1)-(2), 7B-905(c) (2013). Respondents appeal.
II. Arguments on Admission of Hearsay Under Rule 803(24)
On appeal, Respondents each challenge the trial court's use of Rule 803(24) to admit Eddie and Eve's hearsay statements into evidence. Specifically, Respondents contend that the trial court abused its discretion in determining that Eddie and Eve's statements (1) were more probative on the issue than any other evidence which DSS could procure through reasonable efforts and (2) had circumstantial guarantees of trustworthiness. Mother also contends that Eddie's statements to Detectives Marcum and Vanderbilt on 9 May 2013 fail to serve the interests of justice. Respondents, however, do not challenge the trial court's findings and conclusions that DSS provided proper notice of its intent to introduce Eve's statements; that the statements are not covered by another exception to the hearsay rule; or that the statements concern material facts relevant to adjudication.
III. Standard of Review and Applicable Law
Admission of evidence [under Rule 803(24) ] is addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown. An abuse of discretion warranting reversal results only upon a showing that the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision. The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred.
Brissett v. First Mount Vernon Indus. Loan Ass'n,--- N.C.App. ----, ----, 756 S.E.2d 798, 803 (2014) (citations omitted) (internal quotations omitted). Therefore, "[w]e will find reversible error only if the findings are not supported by competent evidence, or if the law was erroneously applied." State v. Deanes,323 N.C. 508, 515, 374 S.E.2d 249, 255 (1988) (citation omitted), disapproved on other grounds by State v. Jackson,348 N.C. 644, 652-53, 503 S.E.2d 101, 106 (1998).
"Hearsay" is defined as any "statement, other than one made ... while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2013). Our Rules of Evidence make hearsay inadmissible "except as provided by statute or by these rules." N.C. Gen.Stat. § 8C-1, Rule 802 (2013). "Rule 803 of the Rules of Evidence... sets out the exceptions to the hearsay rule that apply regardless of the availability of the person making the statement." Little v. Little,--- N.C.App. ----, ----, 739 S.E.2d 876, 879 (2013). Subsection 24 allows for the admission of
[a hearsay] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
N.C. Gen.Stat. § 8C-1, Rule 803(24). "The rule further requires that notice be given to the opposing party, 'to provide the adverse party with a fair opportunity to prepare to meet the statement.' " N.C. Dep't of Transp. v. Cromartie,214 N.C.App. 307, 318, 716 S.E.2d 361, 368 (2011) (quoting N.C. Gen.Stat. § 8C-1, Rule 803(24) ).
In Smith,our Supreme Court established the protocol for trial courts when deciding whether to admit hearsay under Rule 803(24).
The trial court must determine in this order:
(A) Has proper notice been given?
(B) Is the hearsay not specifically covered elsewhere?
(C) Is the statement trustworthy?
(D) Is the statement material?
(E) Is the statement more probative on the issue than any other evidence which the proponent can procure through reasonable efforts?
(F) Will the interests of justice be best served by admission?
The trial court is required to make both findings of fact and conclusions of law on the issues of trustworthiness and probativeness[.]
Deanes,323 N.C. at 515, 374 S.E.2d at 255 (citing State v. Smith,315 N.C. 76, 92-96, 337 S.E.2d 833, 844-46 (1985) ).
IV. Eve's Statements
Respondents each challenge the trial court's use of Rule 803(24) to admit Eve's out-of-court statements to both Ms. Roulhac on 8 May 2013 and to Ms. Medwid on 9 May 2013. They argue that the trial court abused its discretion by determining that Eve's statements were more probative on the issues than other evidence reasonably available to DSS and that her statements were sufficiently trustworthy. We disagree.
A. More Probative than Other Evidence Reasonably Available to DSS
Respondents D.H. and J.E. challenge the trial court's conclusion that Eve's statements are "more probative on the point for which they are offered than any other evidence which [DSS] can procure through reasonable efforts[.]" They contend that the trial court failed to properly consider Eve's availability to testify in person at the adjudicatory hearing.
As our Supreme Court has noted,
[a]lthough the availability of a witness is deemed immaterial for purposes of Rule 803(24), that factor enters into the analysis of admissibility under subsection (B) of that Rule which requires that the proffered statement be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." If the witness is available to testify at trial, the "necessity" of admitting his or her statements through the testimony of a "hearsay" witness very often is greatly diminished if not obviated altogether.
State v. Fearing,315 N.C. 167, 171-72, 337 S.E.2d 551, 554 (1985) (citations omitted) (internal quotations omitted).
In the instant case, the trial court made the following findings and conclusions:
10. It would be detrimental to the welfare of these juveniles to compel them to testify in court. They would likely suffer from anxiety, which could cause behavioral disruptions. The formality of the courtroom setting itself would likely be overwhelming, but being questioned by different attorneys over a long period of time, even in a closed-circuit situation would likely cause anxiety and negatively affect the juveniles in their placement, at school and in the social context. Further, causing these children to testify could hamper the progress they are making in therapy.
...
33. The proffered hearsay statements of [Eve] to Carol Roulhac on May 8, 2013 ... and statements of [Eve] to Colleen Medwid on May 9, 2013 are more probative on the point for which they are offered than any other evidence which the proponent can procure through reasonable efforts due to the age, risk and bias of [Eve].
...
4. The following hearsay statements ... have circumstantial guarantees of trustworthiness and are more probative on the point for which they are offered than any other evidence which [DSS] can procure through reasonable efforts: Statements of [Eve] to Carol Roulhac on May 8, 2013 ... [and] to Colleen Medwid on May 9, 2013.
The findings in paragraph 10 are consistent with the testimony of Jodi Province ("Ms.Province"), Eve's therapist and an expert in "mental health counseling for children under the age of ten[.]" Ms. Province "strongly recommend[ed]" that Eve not "be required to testify in this matter" due to the resultant confusion, anxiety, and trauma she would experience. Ms. Province was also concerned that Eve's testimony would not be truthful because she "may feel guilt and maybe feel like she is getting someone in trouble and that she doesn't want anyone to be in trouble."
Although the trial court did not expressly find Eve unavailable to testify, the evidence supports the court's determination that Eve's out-of-court statements are more probative than other evidence reasonably available to DSS.
B. Circumstantial Guarantees of Trustworthiness
Respondents next argue that Eve's out-of-court statements do not have circumstantial guarantees of trustworthiness. We disagree.
As an initial matter, we reject Mother and Respondent J.E.'s contentions that the alleged inconsistencies in Eve's statements detract from their trustworthiness. Under Rule 803(24), such inconsistencies have no bearing on hearsay statements' "circumstantial guarantees of trustworthiness[.]" "The relevant circumstances in determining trustworthiness include only those that surround the making of the statement." State v. Waddell,351 N.C. 413, 422, 527 S.E.2d 644, 650-51 (2000) (citation omitted) (internal quotations omitted). As Respondents each note, "[t]he trial court must notconsider the corroborative nature of the statement when determining whether it qualifies as residual hearsay." State v. Champion,171 N.C.App. 716, 722, 615 S.E.2d 366, 371 (2005) (emphasis added). Therefore, any inconsistencies in Eve's statements are irrelevant in determining whether each statement has circumstantial guarantees of trustworthiness.
In assessing whether a declarant's statement "had circumstantial guarantees of trustworthiness equivalent to those present in an established exception to the hearsay rule[,]" the trial court must consider the following factors:
(1) whether the declarant had personal knowledge of the underlying events,
(2) whether the declarant is motivated to speak the truth or otherwise,
(3) whether the declarant has ever recanted the statement, and
(4) whether the declarant is available at trial for meaningful cross-examination.
State v. Valentine,357 N.C. 512, 518, 591 S.E.2d 846, 852 (2003) (citing State v. King,353 N.C. 457, 479, 546 S.E.2d 575, 592 (2001) ). No single factor is dispositive. Smith,315 N.C. at 94, 337 S.E.2d at 845. Rather, the court "should focus upon the factors that bear on the declarant at the time of making the out-of-court statement and should keep in mind that the peculiar factual context within which the statement was made will determine its trustworthiness." Id."[T]he issue is not whether [the declarant's] statement is objectively accurate; the determinative question is whether [the declarant] was motivated to speak truthfully when he made it." State v. Sargeant,365 N.C. 58, 66, 707 S.E.2d 192, 197 (2011).
In the instant case, the trial court found that "[t]he circumstances surrounding the hearsay statements made by [Eve] to Social Worker Roulhac on May 8, 2013 ... [and] at the Dove House [to Ms. Medwid on 9 May 2013] have circumstantial guarantees of trustworthiness." The trial court supported this determination with detailed findings about the circumstances under which Eve made these statements. Although the court did not expressly address the four Valentinefactors, this omission is not fatal. "If the trial court either fails to make findings or makes erroneous findings, we review the record in its entirety to determine whether that record supports the trial court's conclusion concerning the admissibility of a statement under a residual hearsay exception." Sargeant,365 N.C. at 65, 707 S.E.2d at 196. "We will review the record" and the trial court's evidentiary findings to "make our own determination." Valentine,357 N.C. at 518, 591 S.E.2d at 853.
In addressing the Valentinefactors, Respondents do not contest that Eve has personal knowledge of the events or that Eve never recanted her statements. Although Respondents D.H. and J.E. contend that the trial court did not make specific findings that Eve was unavailable for trial, we have already addressed and dismissed this argument. The trial court found, and Respondents do not challenge, that requiring Eve to testify would be "detrimental to [her] welfare" and "could hamper the progress [she is] making in therapy." Accordingly, the record reveals sufficient evidence supporting the trial court's determination that Eve was unavailable to stand trial.
Under the Valentinefactors, Respondents have one remaining challenge to the circumstantial guarantees of trustworthiness of Eve's hearsay statements: whether Eve was "motivated to speak the truth or otherwise" when she made her out-of-court statements to Ms. Roulhac and Ms. Medwid. See Valentine,357 N.C. at 518, 591 S.E.2d at 852. Ms. Roulhac met with Eve in a private room at her school to ask her about a CPS report concerning allegations of domestic violence. During the interview, Ms. Roulhac asked Eve "if she knew the difference between a 'good touch and a bad touch.' " Eve responded, "My brother [Eddie] came in my room last night and touched my butt[,]" and proceeded to describe his actions in more detail. The trial court found that Eve made these disclosures "in a comfortable and 'safe' environment[;]" that Ms. Roulhac "did not use leading questions" or "ask [Eve] many specific questions[;]" that Eve "spoke in a 'very matter of fact' manner" and "did not appear to be afraid or upset[;]" and that Eve "used age-appropriate language to discuss" the abuse. Therefore, we find that Eve was motivated to speak truthfully to Ms. Roulhac.
The trial court made similar findings regarding Eve's videotaped statements to Ms. Medwid on 9 May 2013. The trial court noted Eve's demeanor, her age-appropriate language, and the sensitive nature of her disclosures. The trial court also found that Ms. Medwid, a trained forensic interviewer, "adhered to the protocol" established by the Dove House, a "licensed and accredited child advocacy center[.]" We find that Eve was also motivated to speak truthfully to Ms. Medwid. Therefore, the trial court did not abuse its discretion in finding that Eve's statements contained circumstantial guarantees of trustworthiness under a Valentinefactors analysis.
In challenging the trial court's finding that Eve's statements contained circumstantial guarantees of trustworthiness, Mother contends that the trial court abused its discretion by finding Eve competent to stand trial without assessing whether she understood the difference between truth and fantasy. Mother contends that the trial court's findings that Eve understood "the difference between a truth and a lie" but would be unlikely to "understand the concept of swearing on a Holy Bible" was "tantamount to passing on her competence to testify as a witness" and effectively resolved the dispositive issue in the case: "Eve's veracity." We disagree.
Our Rules of Evidence establish a presumption of competency under N.C. Gen.Stat. § 8C-1, Rule 601(a) (2013). The presumption may be rebutted by a showing that a witness is "(1) incapable of expressing himself or herself concerning the matter as to be understood ... or (2) incapable of understanding the duty of a witness to tell the truth." N.C. Gen.Stat. § 8C-1, Rule 601(b) (2013).
In order to assess circumstantial guarantees of trustworthiness, the court necessarily considers one's ability to express herself and her understanding of truth. For example, the trial court found that Harriet's statements at the Dove House lacked the guarantees of trustworthiness required by Rule 803(24), in part, because she "was extremely difficult to understand" and "did not appear to even understand what happened during the interview."
Even so, there is sufficient evidence to support the trial court's finding that Eve was competent to testify at trial, although we note that Eve did not testify. Eve was eight years old in May 2013. Ms. Province, Eve's therapist and an expert in "mental health counseling for children under the age of ten [,]" testified that Eve had the ability to remember and recant her experiences and also understand "the need to tell ... the truth about what's happened [.]" Ms. Province further stated that children of Eve's age generally would not understand the "significance" of swearing on a Bible. Ms. Medwid described for the court the "truth/lie" technique she uses to determine whether a child who is at least six years of age is able to distinguish truth from falsity. In addition to employing this technique, Ms. Medwid asked Eve not to guess at a response if she did not know the answer to a question, and to correct Ms. Medwid if she said anything that was mistaken. Even without our presumption of competency, this is sufficient evidence that Eve was capable of expressing herself and understood the duty to tell the truth.
In determining that Eve's statements had circumstantial guarantees of trustworthiness, the trial court found that Eve was unable to testify at trial without hampering her progress in therapy; was motivated to speak the truth to both Ms. Roulhac and Ms. Medwid; and was competent because she could express herself and understood her duty to tell the truth.
The trial court properly analyzed the admissibility of Eve's statements under Rule 803(24). Therefore, the court did not abuse its discretion in determining that Eve's out-of-court statements were more probative on the issues than other evidence reasonably available to DSS, in finding circumstantial guarantees of trustworthiness in Eve's statements to Ms. Roulhac and Ms. Medwid, and in admitting Eve's out-of-court statements to Ms. Roulhac and Ms. Medwid at the adjudicatory hearing.
V. Eddie's Statements
We decline to review the trial court's admission of Eddie's statements to Ms. Roulhac and Detective Vanderbilt on 8 May 2013, and his videotaped statements to Detectives Marcum and Vanderbilt at the police department on 9 May 2013 under Rule 803(24) for an abuse of discretion.
The mere admission by the trial court of incompetent evidence over proper objection does not require reversal on appeal. Rather, the appellant must also show that the incompetent evidence caused some prejudice. In the context of a bench trial, an appellant must show that the court relied on the incompetent evidence in making its findings. Where there is competent evidence in the record supporting the court's findings, we presume that the court relied upon it and disregarded the incompetent evidence.
In re Huff,140 N.C.App. 288, 301, 536 S.E.2d 838, 846 (2000) (citations omitted) (internal quotation marks omitted).
In the instant case, the trial court's findings and conclusions are supported by sufficient evidence independent of Eddie's statements. Specifically, Eve's properly-admitted statements, Respondents' statements to Ms. Roulhac and law enforcement, and Eddie's adjudication of delinquency for second-degree rape and sexual offense support the findings in the adjudication order. Ms. Roulhac testified that Eve "disclose[d] that [Eddie] had touched her in her butt." During her interview with Ms. Medwid, she similarly described Eddie coming into her room, placing his penis inside her "private"-both her "front part" and her "butt"-and moving "up and down." Eve said that she showed Mother and Respondent D.H. the "gooey stuff" Eddie left on her blanket and that she complained to each of her parents about Eddie's sexual abuse on multiple occasions over a period of two years. In her statement to Detectives Dyson and Marcum, Mother acknowledged that Eve told her in 2012 that Eddie had taken her and Harriet into a closet, asked them to suck on his penis, and then "made [Harriet] do it." Respondent J.E. admitted that both Eve and Mother told him about Eddie "molesting his sisters[.]" Additionally, DSS introduced a copy of the trial court's 22 August 2013 order adjudicating Eddie delinquent based upon his admission to three counts of second-degree statutory rape under N.C. Gen.Stat. § 14-27.3 and three counts of second-degree statutory sexual offense under N .C. Gen.Stat. § 14-27.5 against his sisters. Therefore, we conclude that Respondents were not prejudiced by the admission of Eddie's hearsay statements and decline to review whether the trial court erred in admitting his statements.
VI. Adjudication of Abuse under N.C. Gen.Stat. § 7B-101(1)
Mother and Respondent D.H. claim that the trial court erred in entering adjudications of abuse as to Eddie and Eve. We disagree.
In reviewing the trial court's decision, we must determine whether the findings of fact are supported by clear, cogent and convincing evidence, and whether the findings support the court's conclusions of law. If there is competent evidence, the findings of the trial court are binding on appeal. An appellant is bound by any unchallenged findings of fact. Moreover, erroneous findings unnecessary to the determination do not constitute reversible error where the adjudication is supported by sufficient additional findings grounded in competent evidence. We review conclusions of law de novo.
In re B.S.O.,--- N.C.App. ----, ----, 760 S.E.2d 59, 62 (2014) (citations omitted) (internal quotation marks omitted).
Our Juvenile Code defines an abused juvenile, inter alia,as one whose parent or caretaker
[c]ommits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: first-degree rape, as provided in G.S. 14-27.2 ; rape of a child by an adult offender, as provided in G.S. 14-27.2A ; second degree rape as provided in G.S. 14-27.3 ; first-degree sexual offense, as provided in G.S. 14-27.4 ; sexual offense with a child by an adult offender, as provided in G.S. 14-27.4A ; second degree sexual offense, as provided in G.S. 14-27.5 [.]
N.C. Gen.Stat. § 7B-101(1)(d) (2013). Mother and Respondent D.H. contend that neither the evidence nor the trial court's findings support adjudication under N.C. Gen.Stat. § 7B-101(1)(d). Mother asserts that "there was no 'clear and convincing' evidence that she, or either father, knew or had reason to know that Eddie had or would perpetrate a sex offense enumerated in N.C. Gen.Stat. § 7B-101(1)(d) against Eve." Respondent D.H. similarly contends that the "evidence did not show that [Respondents] committed, permitted[,] or encouraged Eddie to commit a sex offense on Eve." Mother and Respondent D.H. specifically challenge the trial court's finding 31 that they "were aware that [Eddie] was committing sexual assaults on [Eve] and failed to take appropriate remedial measures to ensure the child's safety."
In the instant case, the trial court made findings based on evidence regarding the allegations that Eddie repeatedly sexually abused Eve, even after Respondents learned of the abuse. The trial court found "that [Eddie] penetrated [Eve] anally with his penis on multiple occasions, even after [Mother] and [Respondent D.H.] learned of the abuse." Ms. Roulhac testified that Eve "disclose[d] that [Eddie] had touched her in her butt." During Eve's forensic interview with Ms. Medwid, Eve similarly described Eddie coming into her room, placing his penis inside her "private"-both her "front part" and her "butt"-and moving "up and down." Eve said that Eddie moved up and down either on or inside her "private" forty times and had put his penis inside her butt twenty times. Eve also told Ms. Medwid that "gooey stuff" came out of Eddie's penis and got onto her legs, blanket, and teddy bear. Ms. Medwid provided the trial court with the anatomical diagram Eve used to show what Eddie had done to her. These incidents began when Eve was six or seven years old and occurred at both the family's previous and current residences.
Detective Dyson testified that Eddie had been adjudicated delinquent "for the acts against his sisters[.]" DSS introduced a copy of the trial court's 22 August 2013 order adjudicating Eddie delinquent based upon his admission to three counts of second-degree statutory rape under N.C. Gen.Stat. § 14-27.3 and three counts of second-degree statutory sexual offense under N.C. Gen.Stat. § 14-27.5. A parent permitting either offense to be committed by or upon a minor child constitutes abuse under N.C. Gen.Stat. § 7B-101(1)(d). Therefore, there is sufficient evidence that Eddie repeatedly sexually abused Eve.
There is also evidence regarding the challenged finding that "[t]hese parents were aware that [Eddie] was committing sexual assaults on [Eve] and failed to take appropriate remedial measures to ensure the child's safety." Eve said that she showed Mother and Respondent D.H. the "gooey stuff" Eddie left on her blanket and that she complained to each of her parents about Eddie's sexual abuse on multiple occasions over a period of two years. Eve also told her grandmother, aunt, and uncle about the abuse.
In her statement to Detectives Dyson and Marcum, Mother acknowledged Eve told her in 2012 that Eddie had taken her and Harriet into a closet, asked them to suck on his penis, and then "made [Harriet] do it." Mother told Ms. Roulhac that Eve had complained of Eddie sexually abusing her on four occasions, and Mother expressed her concern that Harriet's bedwetting and developmental delays "were the result of Eddie sexually abusing her ." Despite these concerns and Eve's repeated disclosures, Mother and Respondent D.H. admitted that "[Eddie]'s bedroom remained upstairs, right across from the girls' bedroom. That the parents' bedroom remained downstairs. They did not make any plans to put the girls in the room with them."
Mother explained to detectives that she was "scared" to contact DSS or the police because Respondent J.E. warned her she would be arrested. Respondent J.E. admitted that both Eve and Mother told him about Eddie "molesting his sisters[.]" He told Mother and Respondent D.H. not to "call law enforcement because [Eddie] is going to be charged and the kids are going to be removed from the home." Respondent D.H. claimed that his relatives told him to "keep it in house."
This is sufficient evidence of Respondents' repeated disregard of Eve's disclosures. Therefore, we hold that the evidence and the trial court's findings fully support the trial court's conclusion that Eddie and Eve were abused juveniles, in that their parent or caretaker permitted Eddie to commit an act upon Eve pursuant to N.C. Gen.Stat. § 7B-101(1)(d). Specifically, we note Eve's 2012 disclosure to Mother of Eddie's oral penetration upon then-five-year-old Harriet; Eve's additional unheeded disclosures to each Respondent; Eve's statement that Eddie engaged in twenty acts of anal intercourse with her between 2012 and May 2013; and Eddie's admission to delinquency for three counts of second-degree statutory rape and three counts of second-degree statutory sexual offense against his sister. Therefore, we find that the trial court properly adjudicated Eddie and Eve as abused juveniles pursuant to N.C. Gen.Stat. § 7B-101(1)(d).
Mother and Respondent D.H. also challenge the trial court's conclusion that Eddie and Eve were abused juveniles under N.C. Gen.Stat. § 7B-101(1)(e), in that their parent or caretaker "created or allowed to be created serious emotional damage to the juvenile[s.]" Because we uphold the adjudications of abuse under N.C. Gen.Stat. § 7B-101(1)(d), we decline to review the trial court's second theory of abuse. Mother suggests that this additional ground for the adjudication may affect the scope of the court's dispositional authority under N.C. Gen.Stat. § 7B-904 (2013). We are not persuaded. The facts that establish Eddie and Eve's status as abused under N.C. Gen.Stat. § 7B-101(1)(d) and the adjudication of neglect provide sufficient justification for the court to address Eddie and Eve's emotional health as part of its disposition.
VII. Conclusion
The trial court did not abuse its discretion in admitting Eve's out-of-court statements under the residual hearsay exception in Rule 803(24). The admission of Eddie's hearsay statements was not prejudicial to the adjudication of the juveniles as abused and, therefore, we decline to review whether this admission was in error. The evidence and the trial court's findings of fact supported its conclusions that Eddie and Eve were abused and neglected juveniles, and that Harriet was a neglected juvenile. Therefore, we affirm the trial court's adjudication order.
AFFIRMED.
Chief Judge McGEE and Judge HUNTER, JR. concur.
Report per Rule 30(e).
Opinion
Appeal by respondent-parents from orders entered 21 October 2014 and 19 November 2014 by Judge Christine Underwood in Iredell County District Court. Heard in the Court of Appeals 29 June 2015.

We adopt the pseudonyms used by the parties to preserve the juveniles' privacy.

We adopt the trial court's unchallenged finding that Respondent D.H. is Harriet's biological father.

In the trial court's Order on Motion to Introduce Hearsay, Finding of Fact 32 misstates that this videotaped interview took place on 9 May 2013.